SCHALK, Appellant v. DICKINSON,
Executrix of Estate of Lange, Respondent

(232 N.W.2d 140)

(File No. 11509. Opinion filed August 22, 1975)

**John J. Simpson, Robert J. Maule,** Winner, for petitioner and appellant.

**J. M. Grossenburg** of **Day & Grossenburg,** Winner, for respondent.

DUNN, Chief Justice.

This is a will contest. Gould B. Lange died on February 7, 1972. She left a will, which had been executed in March 1966, in the State of Texas, leaving all of her property to a surviving daughter, Loelleta Dickinson, and without mentioning a grand-daughter, Carolyn Schalk, who was the child of Ruthina Schoun, deceased daughter of the testatrix. Carolyn Schalk filed objections to the Final Account and Petition for Distribution, claiming that she was unintentionally omitted under South Dakota's preter-mitted heir statute, SDCL 29-6-10. The trial court, after hearing, upheld the will and issued a Final Decree of Distribution. The contestant appeals, claiming that the trial court erred in (1) permitting evidence *aliunde* the will to resolve the question of pretermission; (2) in permitting testimony by way of depositions where the witnesses were unexplainably absent; and (3) in finding that Carolyn Schalk was intentionally omitted from the will. We reverse.

Gould B. Lange and her husband lived in Wewela, Tripp County, South Dakota, from 1913 to 1960 when the testatrix's husband passed away. It was testatrix's only marriage, and two daughters—Loelleta Dickinson and Ruthina Schoun—were born of this marriage.

After her husband's death, testatrix maintained a home in South Dakota until 1966, but spent several months each year with her daughter, Ruthina Schoun, first in the State of Washington and later in California. Upon Ruthina Schoun's contracting cancer, the family moved to California, and testatrix was with this daughter almost constantly until Ruthina died in February 1966.

Ruthina Schoun had one daughter, Carolyn Schalk, who is the contestant here. She married Robert Schalk in 1957 against the wishes of her mother, Ruthina Schoun, who wanted her

daughter to finish college. According to the deposition of Loelleta Dickinson, the testatrix was also disturbed about this marriage to Robert Schalk for the same reason. Mrs. Dickinson also testified that the testatrix disliked Robert Schalk because he. was rude to her on the few occasions that she saw him.

During the last prolonged illness and death of Ruthina Schoun, the testatrix saw her granddaughter almost daily. After Ruthina's death, testatrix moved to El Paso, Texas, to live with her surviving daughter, Loelleta Dickinson. After this move, testatrix did not personally see Carolyn Schalk during her lifetime; however, she did correspond on a regular basis and the two exchanged gifts.

According to the testimony of Mrs. Dickinson, a few weeks after she moved to Texas, testatrix expressed a desire to get her affairs in order. Mrs. Dickinson set up an appointment with Mr. Ross, her personal attorney and long-time acquaintance. She took the testatrix to Mr. Ross' office and stayed in the room while testatrix advised him as to the disposition of her property. Mrs. Dickinson was also present a few days later when the will was read, executed and witnessed. Mrs. Lange was eighty-four years of age and in a very distraught and weakened condition from the ordeal of seeing her other and favorite daughter die a slow death from cancer. Both Mr. Ross and Mrs. Dickinson testified that Mrs. Lange was of sound mind at this time.

Mr. Ross testified by deposition that the testatrix advised him that she wanted to leave her entire property to the surviving daughter, Mrs. Dickinson. He further testified that he determined from Mrs. Lange that her only other child was dead, and that he did not question her as to issue of the deceased daughter as this was not necessary under Texas law.* This final and only will ever

---

* Texas has no pretermitted heir statute for grandchildren. SDCL 29-2-10 provides that:

"Every will, or revocation thereof, which is in writing and subscribed by the testator, shall be deemed to be legally executed and of the same force and effect as if executed in the mode prescribed by this chapter, if it is executed in the mode prescribed by the law either of the place where executed or of the testator's domicile.

"No will or revocation is valid unless executed either according to the

executed by Gould B. Lange provided that her entire property go to the surviving daughter, Loelleta Dickinson, without any mention of Carolyn Schalk, the granddaughter. Mrs. Lange died on February 7, 1972, and this·contest of the will ensued.

■ The first question raised is whether the trial court erred in permitting evidence on intent of the ˙testatrix aliunde the will in resolving the question of pretermission. SDCL 29-6-10, South Dakota's pretermitted heir statute, provides:

"When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator as if he had died intestate, and succeeds thereto as provided in § 29-6-9."

In a well-reasoned opinion, this court decided the question in issue here in 1930. *In Re Swenson's Estate,* 57 S.D. 90, 230 N.W. 884. There the court stated:

"Being free at this time to adopt the rule that seems to us the better and safer practice, we hold that the court did not err in admitting extrinsic evidence to show an intentional omission by the testator to provide in his will for appellant. Such evidence does not dispute but confirms the expressed will of the testator. There is no uncertainty in the will. The uncertainty arises in the policy of the law to doubt the ability of the testator to express his will because of inadvertence or forgetfulness. Evi-

---

provisions of this chapter or according to the law of the place in which it was made, or in which the testator was at the time domiciled."

Neither party raised this conflict of law question. The executrix chose to probate the estate in Tripp County, South Dakota, and the trial judge accepted jurisdiction and applied the law of South Dakota as to pretermitted heirs. In this case there is no question raised as to the will being legally executed. The question is whether the pretermission statute of South Dakota is to be followed in probating a Texas will. This is a special statute which the legislature of South Dakota saw fit to enact to protect forgotten or unmentioned natural heirs. Where the bulk of the estate is real property situated in South Dakota, and the will is being probated in South Dakota, we feel the trial judge properly considered the pretermission statute in construing this will.

dence showing that there was no forgetfulness or mistake belongs to that same general class as evidence of testamentary capacity." 57 S.D. at 98-99, 230 N.W. at 887.

Even though the facts as suggested by contestant's brief were such that the court could have found intent without evidence outside the will in Swenson, the court did not rule on this basis.

"In the instant case two children of the omitted daughter were provided for, and it might be held that that showed an intentional omission of the daughter and a substitution of her children in her place, but that would not be as convincing as it now is with the added proof of her mental state and confinement in the home for the feeble-minded." 57 S.D. at 98, 230 N.W. at 887.

The court went on to make a clear decision accepting the Massachusetts rule as stated above. We see no reason to overrule this decision.

The contestant next raises the question of respondent's use of depositions at the trial rather than having Mrs. Dickinson and Mr. Ross present for oral testimony. Mrs. Dickinson and the lawyer, Mr. Ross, were long-time residents of El Paso, Texas. Respondent noticed the taking of her own deposition and others, including Mr. Ross', for June 13, 1973, at El Paso, Texas. The notice stated:

"* * * depositions to be taken for purposes of discovery or for use at trial, or for both such purposes."

A stipulation was entered into by the parties at the time of taking stating that:

"* * * the purpose of the depositions [is] for all of the purposes contemplated by the Rules of Civil Procedure of the State of South Dakota."

During the course of the depositions, contestant's attorney in questioning Mrs. Dickinson urged her to answer all questions, as it was a long way to come back to El Paso for further answers. In a brief filed previous to trial, respondent made specific mention,

of the fact that she would rely on the depositions at trial. Contestant stipulated at the pre-trial conference that the court could examine and study the depositions prior to trial.

A few days before the trial, contestant's attorney advised respondent's attorney that he expected Mrs. Dickinson and Mr. Ross to be present at the trial; however, he did not subpoena them and they were not present. The depositions were offered and accepted in evidence over persistent objections of counsel for the contestant.

SDCL 15-6-26(d) reads:

"At the trial   *   *   *   all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions:

*   *   *   *   *   *

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

*   *   *   *   *   *

(b) that the witness is out of the county, unless it appears that the absence of the witness was procured by the party offering the deposition   *   *   *."

■ The trial court held, and we think properly, that the parties and witnesses were absent from the county and that their absence had not been procured by respondent as they had not been present in Tripp County for many years and were actually long-time residents of El Paso, Texas, which was well known to all of the parties. The trial court did not err in permitting the use of these depositions or in its ruling on evidence as to why the parties and witnesses were not present. This would be immaterial after the showing made as to the residence of the parties and the conditions under which the depositions were taken.

In *In Re Swenson's Estate, supra,* the testator had bypassed one daughter in his will and had devised this daughter's share

directly to the daughter's children. Upon allowing evidence *aliunde* the will to the effect that the daughter had a mental problem and was confined to a home for the feeble minded, the intent of the testator became abundantly clear.

In this case, the evidence is not so convincing that Mrs. Lange intentionally omitted her granddaughter. The trial court found:

> "That the Decedent intentionally omitted from her Will the issue of the Decedent's daughter, Ruthina Schoun, and intentionally omitted to provide for the Decedent's granddaughter and Contestant herein, Carolyn R. Schalk.

> "That the Decedent, by executing her Will intended to not provide for her daughter, Ruthina Schoun and Ruthina Schoun's daughter, Carolyn R. Schalk, the Contestant herein."

The trial court in making these findings relied heavily on the language found in the will—"I have one surviving daughter." This was true, of course, but this is not a clear implication or inference that she intended to disinherit the claimant under South Dakota's pretermission statute. See *Batley v. Batley*, 239 Mo.App. 664, 193 S.W.2d 64.

Ordinarily, this court would be bound by these findings unless they were clearly erroneous in accordance with SDCL 15-6-52(a); however, evidence obtained by depositions is viewed in a different light. We held in *Clark & Son v. Nold*, 1971, 85 S.D. 468, 185 N.W.2d 677, that testimony at trial which was introduced by deposition is reviewed as though presented to the Supreme Court for the first time, and is not subject to the clearly erroneous rule stated above.

The record is replete with evidence that the testatrix loved her granddaughter and was actually very close to her as the only child of a deceased daughter. They saw each other almost daily during the long illness and eventual death of the mother (daughter) which had to be an experience that would cement their relationship. Even after moving to Texas, in a home that seems to have been openly hostile, at least to Carolyn's husband,

the testatrix still corresponded with Carolyn on a regular basis with no hint of animosity; they exchanged gifts; and at one point the testatrix, according to letters introduced in evidence, was most persistent in finding and delivering a quilt which she had "hand made" for Carolyn.

The evidence of the testatrix's intentions came from Mr. Ross, the attorney who drew the will, and Mrs. Dickinson who is the sole beneficiary of the will as it now stands. The attorney testified that the testatrix informed him that she wanted to leave her entire property to the surviving daughter. He further testified that he determined from the testatrix that the only other child was deceased, and that he did not inquire further about issue of the deceased child as it was not necessary under Texas law.

Mrs. Dickinson testified in her deposition that her sister had not favored the marriage of Carolyn to Robert Schalk, largely because it meant that Carolyn would drop out of college after only two years. She further testified that the testatrix was likewise disturbed about this marriage, and for the same reason; that she felt also that Robert Schalk had been rude to her and to the testatrix on the few occasions she saw him. The specific instances mentioned did indicate that Robert Schalk had remained rather aloof from this family that had not welcomed him with open arms upon his marriage to Carolyn. There is no question of Mrs. Dickinson's dislike for this man. The degree that this carried over to the testatrix is not so clear and, more important, there is no indication that the testatrix ever blamed or thought the less of Carolyn because of her husband.

The circumstances under which the will was executed must be considered on this issue of intent to disinherit. Almost immediately upon the testatrix's moving to Texas to live with her surviving daughter, Mrs. Dickinson contacted her lawyer of long standing and set up an appointment for drawing a will. She took the testatrix to the attorney and remained in the room while the testatrix advised as to her wishes in disposing of her property, and was there again when the will was read, executed and witnessed. This was at a time when the testatrix was eighty-four years of age and in a weakened physical condition because of her recent ordeal in California.

█ In *Mahan v. Mahan*, 80 S.D. 211, 121 N.W.2d 367, this court made the following statement relative to declarations of a deceased person during his or her lifetime:

"The testimony relied on by plaintiff consists of admissions or declarations claimed to have been made by decedent John R. Mahan during his lifetime. It is well to keep in mind that testimony as to oral statements allegedly made by deceased persons is regarded as the weakest kind of evidence. 31 C.J.S. Evidence § 266. As said by the court in *Kinney v. Murray*, 170 Mo. 674, 71 S.W. 197, ' "The evidence consisting, as it does, in the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed himself, or the witness having misunderstood him. It frequently happens also that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say. * * * When we reflect upon the inaccuracy of many witnesses in their original comprehension of a conversation, their extreme liability to mingle subsequent facts and occurrences with the original transaction, and the impossibility of recollecting the precise terms used by the party, or translating them by exact equivalents, we must conclude there is no substantial reliance upon this class of testimony." * * * "The intrinsic weakness of this class of evidence is further enhanced in any given case by the length of time that has intervened since the declarations were made, and the ease with which it can be manufactured, and the temptation to do so, when all those by whom it could be contradicted are in their graves." ' " 80 S.D. at 216, 121 N.W.2d at 369-370.

Such evidence, if it is to overcome the pretermitted heir statute, must be clear and convincing, and unmistakable in its impact.

In this case, the lack of a clear statement of intention that Carolyn was to be disinherited because of her husband or for any other reason and the great temptation of the sole beneficiary to make testatrix's statements of dislike of Carolyn's husband

conform to her own, and the circumstances under which the will was executed, leave us with much less than the clear conviction required that the testatrix intended to disinherit her granddaughter.

We reverse and hold that the granddaughter, Carolyn Schalk, should receive her share of the property in accordance with SDCL 29-6-10.

WINANS, DOYLE and COLER, JJ., concur.

WOLLMAN, J., dissents.

WOLLMAN, Justice (dissenting).

Although I agree that the trial court properly admitted the depositions and that we should adhere to our decision in *In Re Swenson's Estate*, 57 S.D. 90, 230 N.W. 884, I do not agree that the judgment should be reversed.

The evidence supports the trial court's finding that testatrix intentionally omitted to provide for Carolyn Schalk, whether we apply the clear and convincing evidence test, of which nothing is said in *In Re Swenson's Estate, supra,* nor to which is the decision in *Mahan v. Mahan,* 80 S.D. 211, 121 N.W.2d 367, applicable, or the preponderance of the evidence test. The testimony of attorney Ross is clear and unequivocal: testatrix wanted to leave everything to Loelleta Dickinson. This testimony confirms the provisions of the will.

I am unable to find in the record any evidence that testatrix was in a very distraught and weakened condition on the day she conferred with attorney Ross about the terms of her proposed will or on the day she signed the will. Attorney Ross testified that when he first met testatrix at the conference to discuss the terms of her will she was perfectly lucid and was in possession of her mental faculties. Indeed, he testified that, "For an 85 year old woman, I thought she was remarkably well, if I can use the word, preserved * * * she impressed me by being able to get around for a person of that age quite well * * *."

A statement by testatrix in her will to the effect that, "I intentionally omit to provide in this my last will and testament

for Carolyn Schalk, daughter of my deceased daughter, Ruthina Schoun," would have satisfied the requirements of SDCL 29-6-10; no reason for the omission would have been necessary. Why should we require a reason for the omission so long as the evidence *aliunde* the will demonstrates, as it does to me, that testatrix intended not to provide for Carolyn?

I would affirm the judgment.