73 Ariz. 216 (1952)
240 P.2d 176
In re CONNESS' ESTATE.
MOHAN et al.
v.
FIRST NAT. BANK OF ARIZONA et al.
No. 5353.
Supreme Court of Arizona.
January 22, 1952.
Rehearing Denied April 3, 1952.
*217 Gust, Rosenfeld, Divelbess, Robinette & Linton, of Phoenix, and Westover & Mansfield, of Yuma, for appellants.
Byrne & Green and A.J. Eddy, of Yuma, and Daniel McMullen, of Streator, Ill., for appellees.
UDALL, Chief Justice.
Benjamin J. Conness, a resident of Yuma county, Arizona, died testate, February 3, 1946, in Los Angeles, California. He left no direct descendants but was survived by a brother Luke E. Conness, and some twenty-one nephews and nieces, the children of his brothers and sisters, to all of whom he made specific bequests as well as to some grandnephews and nieces.
This appeal primarily involves the construction and interpretation of the "Fourth" paragraph of the will which provides in part as follows: "Fourth: I direct that my executor sell as soon as possible all of my real property in Yuma County, Arizona, in Beach, Golden Valley County, North Dakota, in Yankton, Yankton County, South Dakota, in Illinois, in Oklahoma, and at 163 West Jefferson Street, Los Angeles, California, and any other real property which I may own at the time of my death. It is my will and desire that the said real property, be converted into cash, in order to pay the specific bequests hereinafter contained in my will in paragraph Fifth following. In the event the proceeds of sale or sales of said real property are more than sufficient to pay the said specific bequests, then and in such event, such excess shall be used for the education of my brothers' and sisters' children so far as possible commensurate with the amount of such excess; * *" (Emp. Sup.)
At the time the testator executed his will, in November of 1945, the youngest living niece or nephew to fall within the above paragraph was thirty-eight years of of age, and several of them were college graduates.
The real property was liquidated by the executor as directed and after paying the specific bequests, $128,584.00 remained to be distributed under the above paragraph of the will. No general residuary clause was contained in the will and as to the testator's personal estate it passed per stirpes to his heirs-at-law as intestate property.
Appellants contend (a) that the "Fourth" paragraph, supra, sets up a trust of the excess from the sales of the real property in favor of the children of the deceased's brothers and sisters, but that it fails for uncertainty, or (b) if it is a specific bequest then it fails because it is *218 too vague and indefinite and urges that the property be distributed according to the law of descent and distribution. The lower court held there was no intention to create a trust, that the words "for the education * * *" were precatory and this was a valid specific bequest to a class which was ascertainable as of the date of death of the testator and ordered the property distributed per capita.
It is left to the courts in doubtful cases to ascertain from the language used and surrounding circumstances the meaning attributed to the words by the testator. It is the duty of the courts to say what was intended when he executed his last will and testament. In discharging this responsibility the courts are not left completely in the dark as there are some general rules of construction to guide us. The controlling factor is the intention of the testator which is gathered from a reading of the whole instrument, not just the doubtful clause, and when so ascertained it will be given effect. Newhall v. McGill, 69 Ariz. 259, 212 P.2d 764. Once the will is established the courts liberally construe the language so as to carry out the intention of the testator and where two constructions are possible the one favoring testacy is preferred. In re Estate of Sullivan, 51 Ariz. 55, 74 P.2d 346; Newhall v. McGill, supra.
We agree with appellants that if an express private trust was intended by the "Fourth" paragraph that it would fail for uncertainty. Our first question then is, did the testator intend to create a trust thereby?
This court in Newhall v. McGill [69 Ariz. 259, 212 P.2d 766] quoted with approval from Fields v. Fields, 139 Or. 41, 3 P.2d 771, 773, 7 P.2d 975, the following from 40 Cyc. pp. 1734, 1735: "The more modern rule, however, is that, in order that a trust may arise from the use of precatory words, the court must be satisfied, from the words themselves, taken in connection with all the other terms of the disposition, that the testator's intention to create an express trust was as full, complete, settled, and sure as though he had given the property to hold upon a trust declared in the ordinary manner."
We are of the opinion that no clear intent to create a trust is manifested by the language used in the "Fourth" paragraph, hence if one is established it must be by judicial construction alone. There is no provision for a trustee, or language from which a command or directory for establishing a trust may be drawn. The circumstances surrounding the execution of the instrument, i.e., a formal witnessed will drawn by an able and experienced attorney (who doubtlessly would have made the trust specific and the intent clear, had that been the purpose of the testator), lend further assistance in arriving at his true intention. Some of the testator's other provisions in the will are: "I give and devise to Mrs. Alice Whalen, the sum of *219 $3,000, which sum shall be used for the purpose of purchasing a home"; "I further give and devise to Luke Quinn * * the sum of $3,000, to be used for his education"; "I further give and devise to * * * Miss Lilly Mohan * * * the sum of $3,000 to be used by her for the care of John Mohan", and in paraphrase his language in another place is "I give a ranch to my nephew, and direct that he keep the ranch thrifty in appearance, and that he retain it as long as possible in the Conness name." These specific bequests are clearly followed by precatory words yet no one would contend they establish a trust.
We agree with the trial court that at most this was only an expression of a wish or desire on the part of the testator to the legatees as to how they should use the bequest. They form a strong moral duty on the legatees to follow his wishes but without more do not establish the necessary intent to create a trust.
We are now faced with the problem of whether the testator made a gift by the "Fourth" paragraph, or whether it is too vague and indefinite to constitute a specific bequest. We adopt in toto the cogent views of the learned trial court as decisive of this issue, viz.:
"I have seen no case holding that the use of the words `to be used for' in connection with the names of the beneficiaries of the `use' is equivalent of `to give to' or like words of donation. That the donative words need not be literally expressed is attested by many cases; but in all it is clear that the donative intent must appear from the fair and reasonable reading of the language of the will. Such expressions, however, as `shall be divided among', or `are to be divided between,' `shall go to', `is to receive', `shall have', `shall be paid to,' `leave to,' `my executor shall offer (a certain bargain or option to buy),' appear in the cases and have been held to be of as binding force as though the perfect clause `I give' had been employed. This is not because such words by any possible interpretation can be said to be literally synonymous with `I give', but because the donative intent appears from the nature of the document, from the context, from the rule that the testator's inent should be effectuated when that intent can fairly be derived from the language of the will, and from the fact that a statement that one is to receive, or take, or be paid a certain sum is from the circumstances equivalent to a statement that `I give' that one the sum.

* * * * * *
"The inference, not a strong one, but rather a straw in the wind, is that the term `used for' implied in the mind of the testator the contemplation that the `use' carried with it the possession, and therefore the gift, for in no other way  there being no trust  could the gift be devoted to the purpose desired but by possession in the persons *220 clearly intended to be the beneficiaries.
"By the will, if the proceeds of sale were inadequate to pay the bequests a pro rata deduction was provided for. Surplus funds were `to be used' for education. The balancing of the two contingencies raises an inference, if but a weak one, of the intent that the surplus in the event of this contingency was intended, at least latently, as a gift to the nephews and nieces, for it is clear by whatsoever reading given the language that they were to be the ultimate beneficiaries of the unknown or problematic surplus. In the one event there was to be a subtraction from or a diminution of the specific bequests. In the opposite contingency there appears the manifest purpose to dispose of the surplus, and a class is selected to be the ultimate beneficiaries of the surplus, if any remained. The attempt, however inartificial the language used to effect the purpose, was made to dispose of that surplus by the will. While we are not authorized to redraw the will by putting into it any words or language not found in it to express the intent, it is my conclusion that a fair reading of the questioned clause in connection with the entire instrument and in the light of the fact that it is a will supports the view that the language expresses with sufficient clearness the dispositive intent that the amount of the unknown contingent surplus should go to the testator's nephews and nieces as a class for the use of improving their education.
"It is with no feeling of dogmatic certainty that I state this as the correct construction. I think it is one within the terms of the will; that it is reasonable, natural, and inherent in the spirit or genius of it. Being obliged in the circumstances to take one horn or the other of the dilemma it is the one I elect as the most reasonably held to be the correct reading of the testator's expressed intent.
"This being the conclusion upon the mooted point the surplus in question must be considered as a specific bequest * *."
Therefore the legatees belonging to the class named take per capita.
Decree affirmed.
STANFORD and PHELPS, JJ., concurring.
DE CONCINI, Justice (dissenting).
I agree with the majority opinion that paragraph four of the will does not create a trust. The authorities cited in the opinion support that theory. Quoting the contested clause from Newhall v. McGill, 69 Ariz. 259, 212 P.2d 764, 765, cited by the majority opinion: "I give, devise and bequeath to my sister, Sarah Campbell McGill all my real and personal property to be cared for and disposed of according to my personal directions to her." It is clear in that case that there was no trust, and the very lack of a trust would indicate only one logical conclusion and that is, a *221 direct devise, by the use of the words "give, devise and bequeath".
Such are not the conditions in the case at bar. The fourth paragraph reads in part as follows:
"I direct that my executor sell as soon as possible all of my real property * *.
"It is my will and desire that the said real property, be converted into cash, in order to pay the specific bequests hereinafter contained in my will in paragraph Fifth following. * * *"
Agreeing with the majority opinion that no trust was created, the remaining question is whether the fourth paragraph was a direct bequest to the deceased's brothers' and sisters' children. It is more reasonable to assume that he was attempting to provide for the education of his brothers' and sisters' grandchildren rather than their children because the latter were between the ages of 38 and 57. Such being the case, paragraph four falls by its own weight, first because there is no trust, second because there is no direct bequest to anyone, and third, if a direct bequest was made, surely it must go to those that the deceased had in mind, to wit, the grandchildren, and not those to whom he made other specific bequests. The majority opinion gives it to the children in spite of the fact that it says in effect that it could not go to them under the trust theory because they were not the persons the deceased had in mind to educate because of their respective ages. Therefore, with no trust created and the beneficiaries named being uncertain, paragraph four fails and the proceeds from the real property must go by descent and distribution.
The majority opinion construes the following words from paragraph four as precatory: "* * * such excess shall be used for the education of my brothers' and sisters' children * * *." Precatory words are words of request, recommendation, suggestion, or expectation. 54 Am.Jur., Trusts, section 54, page 64. The words used by the testator, above quoted, are in a form of a positive command to the executor, and therefore are not precatory. While it is true that trusts may sometimes be created by precatory words, yet we are not here concerned with them because this trust failed for the reason that the beneficiaries failed, that is, it is unreasonable that the deceased meant to educate persons between the ages of 38 to 57, a number of whom were college graduates.
There is no question that the testator attempted to create a trust. Admitting that the words are "precatory" (which in my opinion they are not), when such words are directed to the executor as they were in this case it indicates in the mind of the testator the objects of a trust. Newhall v. McGill, supra.
As above stated, the trust failed; the words were directed to the executor and not to the devisees, therefore I can see no *222 intent on the part of the testator to make a direct bequest.
From an examination of other portions of the will there is disclosed 29 specific bequests, most of those bequests going to the very persons mentioned in paragraph four. To me it is unreasonable to believe that the testator intended paragraph four to be a direct bequest to the children mentioned when he did not use any words such as "give", "devise", "bequest". A further examination of the will reveals that while most of the specific bequests to the class mentioned were for the sum of $3,000, one of them, Emmett Conness, received $10.00.
In view of the fact that the deceased did know how and actually did make many specific bequests in various amounts, suitable to his liking, it is an unreasonable conclusion to say that paragraph four was a direct bequest to those of that class.
While I agree with the general proposition that the law favors testacy, yet I believe that rule must be applied with the intentions of the deceased in mind. His intentions would have to be revealed from the document as a whole and not paragraph four standing by itself. 57 Am.Jur., Wills, section 1136, page 732. But in construing paragraph four by itself one can see a trust was intended but is void for want of certainty of the beneficiaries. See 57 Am.Jur., supra.
Where a will is not ambiguous and is reasonably susceptible of only one interpretation, that interpretation must be accepted even though it may defeat the will. Lowell v. Lowell, 29 Ariz. 138, 240 P. 280.
The majority opinion quotes extensively from the trial court's decision, which in part, is as follows: "The inference, not a strong one, but rather a straw in the wind, is that the term `used for' implied in the mind of the testator * * *." Again, "* * * The balancing of the two contingencies raises an inference, if but a weak one, of the intent that the surplus * * *." And, "It is with no feeling of dogmatic certainty that I state this as a correct construction." Thus it can be seen that the trial court based its decision on an admittedly weak "straw in the wind" and a further "weak inference" by balancing the two contingencies.
It strikes me that this court should not rely on "weak inferences" or a "straw in the wind" but should, rather, give an interpretation that is commensurate with the whole will, so the decision would be with a positive assurance that it is correct, rather than have it rest on a weak "straw in the wind".
Paragraph four having failed to create a trust for the persons mentioned therein, the property should be inherited according to the laws of descent and distribution. Section 39-108, A.C.A. 1939.
"* * * the law favors that construction of a will which conforms most nearly *223 to the general law of inheritance; * * *". 57 Am.Jur., Wills, section 1125, page 719.
The judgment should be reversed.
LA PRADE, Justice (dissenting).
The point presented for determination is the interpretation to be given to the fourth paragraph of the will which is set forth haec verba in the majority opinion. By this paragraph the testator directed his executor to sell all of his real property in order that the same might be converted into cash for two purposes: (1) To provide funds to pay the specific bequests that had been made in the will, and (2) that "In the event the proceeds of sale or sales of said real property are more than sufficient to pay the said specific bequests, then and in such event, such excess shall be used for the education of my brothers' and sisters' children so far as possible commensurate with the amount of such excess". To me it is all too apparent that the testator attempted to create a testamentary trust dependent upon a contingency, the contingency to arise in the event that there was a cash surplus from the sale of his real property after the specific bequests had been paid. This surplus, if any, was to constitute the corpus of the trust to be used for the education of his nephews and nieces. The attempted trust was so indefinite and uncertain that no court could enforce or carry out any intentions expressed by the will, and hence failed. If no trust was intended, the words "so far as possible commensurate with the amount of such excess" would not have been used, as they would be entirely unnecessary because if the money was intended to go to the designated children direct with the request that they use it for their education, the preceding words, to wit: "such excess shall be used for the education of my brothers' and sisters' children" express the testator's full desire. However, the use of the words "so far as possible commensurate with the amount of such excess" emphasized the testator's intent to create a trust. The fact that performance of the trust is impossible cannot obliterate the cold fact that the testator intended to create a trust. The language of the Supreme Court of California in the case of In re Ralston's Estate, 1 Cal.2d 724, 37 P.2d 76, 78, 96 A.L.R. 953, is most apropos to the fact situation in the instant case. In this case, after reviewing the authorities, the court said: "In the instant case there can be no doubt as to the testator's intent to create a trust. As already stated, he expressly declared that he left his `entire property' to the respondent executor `in trust.' His failure to designate with sufficient certainty the objects or purposes of the trust makes the same invalid and unenforceable. However, his intent being clear that the respondent executor was not to acquire a beneficial interest in the property, it passed *224 upon his death, and, in the absence of a residuary clause in the will, to his next of kin and heirs at law, the petitioners in this proceeding, in equal parts under the laws of intestate succession." See 2 Bogert, Trusts and Trustees, section 468, and 2 Restatement of Law of Trusts 1258, section 411.
Having in my own mind determined that the language of the will compels the conclusion that a trust was contemplated and intended, the trustee holds the trust estate upon a resulting trust for the trustor or his estate unless the trustor properly manifested an intention that no resulting trust should arise. To prevent this conclusion, the majority opinion concludes that there was no intention to create, but rather there was an intent to make a bequest. They say that to hold that a trust had been created would depend solely upon judicial construction. I submit that the words attempting to create a trust speak for themselves. They are: "* * * such excess shall be used for the education of my brothers' and sisters' children so far as possible commensurate with the amount of such excess". I respectfully suggest that the majority then resort to judicial construction in finding from these words a donative intent to make a specific bequest. The majority from these words find a donative intent to give the corpus to a class to be divided up per capita. It is pointed out by Mr. Justice De Concini that this judicial construction admittedly has for its foundation inferences designated as "straws in the wind", all of which I submit might more appropriately be termed "conjectures". The majority opinion, by adopting and quoting the language of Judge Kelly, says: "By the will, if the proceeds of sale were inadequate to pay the bequests a pro rata deduction was provided for. Surplus funds were `to be used' for education. The balancing of the two contingencies raises an inference, if but a weak one, of the intent that the surplus in the event of this contingency was intended, at least latently, as a gift to the nephews and nieces, for it is clear by whatsoever reading given the language that they were to be the ultimate beneficiaries of the unknown or problematic surplus. * * *"
A construction in favor of a devise or bequest by implication should never be adopted except in cases where, after a careful and full consideration of the whole will, the mind of the judge is convinced that the testator intended to make the devise or bequest. Bell v. Dukes, 158 Miss. 563, 130 So. 734; Bishop v. McClelland's Ex'rs., 44 N.J. Eq. 450, 16 A. 1, 1 L.R.A. 551. A devise or bequest may be implied under certain circumstances. The presumption, however, is very strong against the testator having intended any device or bequest not set forth in his will. The general rule is that the probability of an intention *225 to make a devise or bequest now implied must appear from the will and must be so strong that a contrary intention cannot reasonably be supposed to have existed in the mind of the testator. Such an implication cannot rest on mere conjecture or solely on the presumptive intent to avoid an intestacy. 69 C.J., Wills, 70, section 1123, citing cases. To suggest that the testator had a latent donative intent is to say that the intent was not visible or apparent that it was hidden or dormant.
"An inference is a logical conclusion from given data or premises; an assumption is something taken for granted without proof, frequently as a basis for argument or inference." See Webster's New International Dictionary, 2d Ed. I respectfully submit that the majority have found a donative intent in the instant case, not on inferences but on assumptions designated as "weak inferences", "straws in the wind" or signs.
For the foregoing reasons I conclude that the testator attempted to create a trust, that the trust failed, that no donative intent can be discovered from the will to make a specific class bequest and as a consequence, with reference to the surplus arising from the fund in question, the testator died intestate and it should devolve upon his heirs at law according to the laws relating to descent and distribution.