In the Matter of the ESTATE OF
George K. LEWIS, Deceased.

Rhoda Lee LEWIS, Appellant,

v.

Ben E. LEWIS, as Personal Representa-
tive of the Estate of George K.
Lewis, Respondent.

No. 19316.

Supreme Court of Utah.

May 13, 1987.

Rehearing Denied June 9, 1987.

Charles M. Bennett, Salt Lake City, for
appellant.

Rodney R. Parker, Stephen L. Roth,
Kent B. Alderman, George N. Larsen, Salt
Lake City, for respondents.

HALL, Chief Justice:

This case arose out of a dispute concerning the will of George K. Lewis (testator). Testator's wife, Rhoda Lee Lewis (appellant), appeals a district court order holding that the estate's assets be distributed pursuant to the Utah succession statute in effect at the time of death.[1]

## I

Testator and appellant were married in 1942. The couple had no children and generally had a sound marriage until 1969. In that year, while appellant and testator were living on their ranch in Springdale, Utah, a rift in their marriage developed. Appellant moved to Salt Lake City, Utah, and the couple remained separated for a period of time.

On December 18, 1969, testator prepared a holographic will. This will, although not admitted for probate,[2] was admitted below as evidence of testator's intent. The will provided that part of testator's estate be administered for the benefit of appellant and the balance be administered for the benefit of testator's collateral relatives.

Appellant and testator ultimately decided to reconcile their marriage, and the trial court specifically found that the couple did so. In 1971, the Lewises purchased a home in Salt Lake City, where they lived until 1975. During this time, they were occasionally separated, primarily so testator could attend to the ranch in Springdale.

On November 5, 1971, testator again executed a holographic will, which provided:

The first request in this last will and testament is in behalf of my wife Rhoda. Insure for her comfort, security and her fair portion. There are more than ample funds, chattels and tangibles to provide this.

I choose as my executor my brother, Ben E. Lewis, to supervise and manage the liquidation and distribution of my estate and/or its proceeds. He is to serve without bond.

I demand that he seek the legal guidance and advice of George N. Larsen in all matters. He will find him to be an able, just and wise counselor who has handled all my important affairs and who is best acquainted with my wishes and hopes and plans. He will find him to be an able helper and fortunate choice.

I ask Rhoda to work harmoniously with these two to ameliorate, simplify, reduce—and wherever possible—eliminate—the complications of probate. Anything except confidence and cooperation could prove to be disastrous[.]

Testator died in Salt Lake County on May 6, 1975. He was survived by appellant and several collateral relatives, including his brother, Ben E. Lewis (respondent). Pursuant to respondent's petition, the district court entered an order appointing him executor of testator's estate and admitting the 1971 will to probate in July 1975. In June 1976, respondent filed a federal estate tax return listing all the assets in testator's taxable estate, including the corresponding date-of-death values. Respondent verified under penalty of perjury that the date-of-death values were "true" and "correct" to the best of his "knowledge and belief."

In October 1982, respondent filed a verified petition setting forth the first and final accounting of his administration of the estate. The petition sought approval of his accounting, authority to distribute the estate under the intestate succession statute in effect during May 1975, section 74–4–5(3), and discharge from his responsibilities as personal representative of the estate. The accounting set forth the date-of-death values of the estate assets in accordance

1. Utah Code Ann. § 74–4–5(3) (1975) (repealed 1977). Title 74 (Wills and Successions) was repealed by Act of March 13, 1975, ch. 150, § 1, 1975 Utah Laws 579, 580 (effective July 1, 1977).

2. Utah Code Ann. § 75–3–107(1) (1978) provides, in pertinent part, that no proceeding may be commenced with regard to a testamentary instrument more than three years following a

testator's death unless the specific testamentary instrument in question has been previously probated in the testator's domicile. The district court ruled that section 75–3–107(1) precluded probating the 1969 will, and it was only admitted to clear up the ambiguity found in testator's 1971 will. See also Utah Code Ann. § 75–8–101 (1978).

with the federal estate tax return previously filed by respondent.

In November 1982, appellant filed objections to respondent's petition. Therein, appellant claimed she was the sole devisee under the will and thus should be the sole beneficiary of testator's estate. The district court issued three memorandum decisions upholding and supplementing its initial determination: that the estate be distributed pursuant to section 74–4–5(3).

## II

Appellant complains that she is legally entitled to testator's estate as the sole devisee under the will. The district court found that testator's will failed to dispose of his assets, yet the court went on to order distribution of the estate to testator's heirs "under the will." The contention is that the district court erred when it ordered distribution of testator's estate "under the will" to persons not named in the will. As hereinafter explained, the district court did not err by determining that testator's will failed to dispose of his assets, and the court properly distributed the assets pursuant to section 74–4–5(3). We view the "under the will" language as an inappropriate choice of words, but perceive no error on the part of the district court.

## III

Appellant claims that the district court erred when it found the dispositive portion of testator's will to be ineffective. Appellant relies upon Utah Code Ann. § 74–2–10 (1953) (repealed 1977), which provided that the preferred method of interpreting a will is that which will prevent a total intestacy.[3] Appellant seeks to have this Court interpret testator's will as properly disposing of testator's estate and then to order distribution of the estate pursuant to the Court's interpretation.

■ First, appellant contends that the language used by testator granted to respondent an imperative special power of appointment over testator's estate in favor of appellant. Although the phrase "power of appointment" has been defined differently by various courts, the essence of such a power is that it gives to the donee the power to cause some person to receive less of the subject property and another person to receive more.[4] The Restatement of Property § 318 (1940) defines "power of appointment" as follows:

> [A] power created or reserved by a person (the donor) having property subject to his disposition enabling the donee of the power to designate, within such limits as the donor may proscribe, the transferees of the property or the shares in which it shall be received.

Contrastingly, the Restatement (Second) of Property § 11.1 (1984) defines "power of appointment" in a more inclusive manner: "A power of appointment is authority, other than as an incident of the beneficial ownership of property, to designate recipients of beneficial interests in property." Under either of these definitions, the donor of an alleged power must intend to create a power, must indicate by whom the power is held, and must specify the property over which the power is to be exercised.[5] Appellant's argument stumbles over the first of these three hurdles.

■ Although no particular words are necessary to create a power of appointment,[6] there are limitations on the degree of ambiguity that will be tolerated when ruling whether or not such a power exists.[7] To create a power of appointment, words

---

**3.** *See also In re Estate of Gardner,* 615 P.2d 1215, 1217 (Utah 1980). Since testator died in Utah prior to the effective date of the Uniform Probate Code, title 74, chapter 2 controls the interpretation of his will. *See* Utah Code Ann. § 75–8–101(2)(a) (1978); *see also In re Estate of Gardner,* 615 P.2d at 1217.

**4.** *E.g., Moore v. Wardlaw,* 522 S.W.2d 552, 558 (Tex.Civ.App.1975); 5 W. Bowe & D. Parker, *Page on Wills* § 45.1 (1962).

**5.** *See* 72 C.J.S. *Powers* § 8 (1987).

**6.** *E.g., In re Estate of Rosecrans,* 4 Cal.3d 34, 38, 480 P.2d 296, 298, 92 Cal.Rptr. 680, 682 (1971); 72 C.J.S. *Powers* § 8 (1987).

**7.** *E.g., In re Estate of Stewart,* 271 So.2d 754, 757 (Fla.1972).

clearly indicating the donor's intent must be used. Indeed, a power is not created unless such intention is plainly expressed or clearly implied.[8] Thus, a power of appointment is not to be inferred except from a clear and unequivocal indication of such intent.[9]

Appellant principally relies upon *In re Rowlands' Estate*,[10] but that case offers little help to appellant on this appeal. In one portion of the *Rowlands* will, "Lucy Cuthbert *or* Mr. Hugh Cuthbert, Sr., of Phoenix" was nominated to serve as executor.[11] The disputed portion of the will provided: "All things not mentioned in my Will I leave it up to Mr. *and* Mrs. Hugh Cuthbert, Sr., *to distribute* to any of my close friends. Please give generously to Maria Discombe who has been a faithful maid."[12] In *Rowlands*, the testatrix distinguished between the executor and the donees and then clearly set forth her intent by giving the donees the power to "dispose" of the residuary of her estate. The *Rowlands* court was not so much concerned with whether a power was created, but rather the nature of the created power.[13]

In contrast, testator's use of the words "insure for her comfort, security and her fair portion" is insufficient to support the requisite intention to create a power of appointment; the words do not express an intention to bestow upon another the power to *dispose* of identified property.[14] This conclusion is reinforced by the fact that testator failed to expressly distinguish between his executor and his executor as a donee, thereby weakening the link between the alleged donative words in the will and the alleged donee of the power. In this case, testator did not clearly express his intention to create a power. Instead, the disputed language must be interpreted as being merely precatory in nature. This conclusion is not in conflict with the probate code. The presumption against intestacy used when construing testamentary instruments is based upon the assumption that by executing a will, the testator intended for his property to pass testate. To this end, a will first and foremost must be construed according to the intent of the testator as expressed from the words of the will and circumstances under which it was executed.[15] In this case, testator's will merely expressed his intent that his wife be properly cared for, but did not dispose of any property or create any power of appointment.

Appellant relies on four rules of construction to support her second suggested interpretation of testator's will, namely, that it is reasonable to interpret the dispositive provisions of the will as a devise to appellant of the testator's entire estate. Appellant relies upon (1) the presumption against intestacy;[16] (2) the rule that a will "should be read and understood as a whole, and meaning given to all of its provisions considered in their relationship

8. *McCuddy v. Citizens Fidelity Bank & Trust Co.*, 505 S.W.2d 766, 767 (Ky.1974); 5 W. Bowe & D. Parker, *Page on Wills* §§ 45.3, 45.8, at 516 (1962).

9. *McCuddy*, 505 S.W.2d at 767.

10. 73 Ariz. 337, 241 P.2d 781 (1952).

11. *Id.* at 339, 241 P.2d at 783 (emphasis added).

12. *Id.* (emphasis added).

13. We note that the *Rowlands* court was careful to point out that if the property was not distributed under the will, the residuary estate would escheat to the state. *Id.* at 340, 241 P.2d at 783.

14. *See, e.g., In re Estate of Schaff*, 19 Ill.App.3d 662, 312 N.E.2d 348 (1974) (right to sell estate assets and gift proceeds to identifiable class

upheld); *In re Estate of Kuttler*, 160 Cal.App.2d 332, 325 P.2d 624, 8 Cal.Rptr. 160 (1958) ("Notify Earl Hayter or my sister Bertha McQuarrie ... for them to dispose of my belongings as they see fit" was upheld to confer a power of appointment upon two named persons.); *In re Lawrence's Estate*, 104 N.H. 457, 189 A.2d 491 (1963) ("I give, devise and bequeath to such relatives of mine and in such amounts as my Executor or Executrix may decide in his or her sole discretion" was held to grant a power of appointment to co-executrixes.).

15. Utah Code Ann. §§ 74–2–1, –2 (1953) (repealed 1977).

16. Utah Code Ann. § 74–2–10 (1953) (repealed 1977); *e.g., In re Estate of Gardner*, 615 P.2d at 1217–18.

to each other"; [17] (3) the rule that a court should look to extrinsic facts to aid the court to interpret the words used by the testator in his will; [18] and (4) the presumption favoring the construction of a will's provisions in favor of a decedent's widow.[19] Yet all of these rules are subject to the fundamental principle that the intent of the testator is controlling.[20] And where, as in the instant case, that intention can in no way be determined from the face of the will or from the surrounding facts and circumstances, the Court will not speculate as to a testator's intention.[21]

Even if the words "insure for" are characterized as reflecting dispository intent on the part of the testator, the construction appellant would have us put on testator's will is directly opposed to testator's own words. The size of the estate referred to by the will is only a "portion" of the whole estate.[22] This Court will not construe a word to create an ambiguity that simply does not exist or allow extrinsic evidence to negate the plain meaning of such a word.[23]

■ Third, appellant contends that the wording of the will should be construed as a bequest by testator to appellant equal to a widow's intestate share.[24] Appellant suggests that the adoption of such construction is supported by the presumption that a will should be construed in favor of a decedent's widow. It has been held that "where the will gives to the widow 'her lawful part,' 'what the law allows her,' or words of like purport, she is entitled thereunder to such part of the testator's estate as she would have received if he had died intestate."[25] However, none of the cases cited in support of this proposition interpret language similar to that used in the will before the Court. All of the cases in support of the quoted proposition involved wording in wills by which the testators made clear the intention to devise a statutory share to their widows.

Appellant relies upon 96 C.J.S. *Wills* § 702 (1957), which provides in part that "in case of doubt as to what portion of his estate the testator intended to give his widow, the doubt must be resolved in her favor, to give her all to which she would have been entitled had he died intestate." This language is from *Marvick v. Donhowe.*[26] In that case, the testator's will gave his wife "that part of my estate which the laws of Iowa provide for a wife's equity." [27] On appeal in that case, the defendants contended that the wife (plaintiff) was devised only her dower right of one-third the testator's estate, as opposed to her one-half intestate share granted by the trial judge. In affirming the trial court's decision in this regard, the Iowa Supreme Court stated:

The law favors such a construction of a will that most nearly conforms to the statutory rule of descent and distribution.

Applying this presumption *in the instant case*, if there is any doubt or uncertainty as to what portion of the testator's

---

**17.** *E.g., In re Estate of Wallich,* 18 Utah 2d 240, 243, 420 P.2d 40, 42 (1966); Utah Code Ann. §§ 74–2–5, –7, –9 (1953) (repealed 1977).

**18.** Utah Code Ann. § 74–2–2 (1953) (repealed 1977).

**19.** 4 W. Bowe & D. Parker, *Page on Wills* § 30.16, at 114 (1961).

**20.** Utah Code Ann. § 74–2–1 (1953) (repealed 1977); *see, e.g., In re Estate of Wallich,* 18 Utah 2d at 243, 420 P.2d at 42; *In re Estate of Baum,* 4 Utah 2d 375, 377, 294 P.2d 711, 712 (1956).

**21.** *See, e.g., In re Beal's Estate,* 117 Utah 189, 193–94, 214 P.2d 525, 527 (1950).

**22.** A "portion" is defined as "[a]n allotted part; a share, a parcel; a division in a distribution; a share of an estate or the like, received by gift or

inheritance." *Black's Law Dictionary* 1046 (rev. 5th ed. 1979).

**23.** *E.g., In re Estate of Baum,* 4 Utah 2d at 378, 294 P.2d at 712.

**24.** Appellant contends that if this construction is adopted, the balance of the estate would be distributed to appellant as testator's sole heir at law since less than $100,000 would pass outside the will.

**25.** 96 C.J.S. *Wills* § 702 (1957) (footnote omitted); *see also* 4 W. Bowe & D. Parker, *Page on Wills* § 36.2 (1961).

**26.** 191 Iowa 214, 217, 182 N.W. 182, 183 (1921).

**27.** *Id.*

estate he intended to give his wife, we must resolve that doubt in her favor, and give her all to which she would have been entitled had the husband died intestate.[28]

The language of *Marvick* must be read in context. In *Marvick*, it was clear the testator had devised his wife a statutory interest. The only question was which statutory interest. Thus, the language from *Marvick* does not apply where, as here, the testator's words do not express an intent to devise a statutory interest. In short, the words "[i]nsure for her comfort, security and her fair portion" used by testator in this case do not fit within the line of cases which have construed dispositive language in a will as devising a spouse an amount equal to his or her intestate share.

■ Appellant finally contends that it is reasonable to interpret the dispositive provision of testator's will as a devise of "the bulk of his estate" to appellant. Appellant argues that by sustaining such a devise, she would take the entire estate since less than $100,000 would pass by intestacy. Appellant claims that the district court in its December 30, 1982 memorandum decision specifically found that testator intended to devise "the bulk of his estate" to appellant. Review of the record does not support this position. The district court's December 30, 1982 memorandum decision states that "although the testator intended his wife to *receive* the bulk of the estate, he did not intend to disinherit his brothers and sisters who are also heirs, and from the circumstances would appear to be among the natural objects of the testator's bounty." (Emphasis added.) The court did not find the will to make a gift of the bulk of the estate to appellant, but instead determined that application of the succession

statute would result in the fulfillment of testator's intent. In our view, the dispositive portion of the will is too indefinite to be construed as leaving any definite portion of the estate to appellant. In summary, we decline to adopt any of appellant's suggested interpretations.

■ We thus conclude that the district court did not err in finding the dispositive provision of testator's will ineffective. The trial court recognized the existence of an ambiguity in the provision. Utah Code Ann. § 74-2-2 (1953) (repealed 1977) provided: "[I]n case of uncertainty arising upon the face of a will as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations." The evidence submitted at the hearing on the circumstances surrounding the will's execution supports the trial court's findings that testator intended that his wife receive less than the entire estate, only a portion thereof, and that determination of the size of that portion was impossible without resorting to sheer speculation and conjecture. Thus, the trial court correctly determined that a patent ambiguity existed in the dispositive provision of the will. Thus, application of the succession statute was appropriate.

## IV

■ Appellant's final contention is that the district court erred by ordering a redetermination of the value of the net estate. The district court determined that distributions from the estate should be made pursuant to the succession statutes contained in sections 74-4-3, 74-4-4, and 74-4-5 of the Utah Code,[29] and ordered in part:

---

**28.** *Id.* (emphasis added); *see also In re Estate of Rogers*, 180 So.2d 167 (Fla.Dist.Ct.App.1965); *In re Estate of Miller*, 243 Iowa 920, 54 N.W.2d 433 (1952).

**29.** Utah Code Ann. § 74-4-5 (1975) (repealed 1977) provided:

> When any person having title to any estate, not otherwise limited by marriage contract, dies without disposing of the estate by will, it is succeeded to and must be distributed, unless otherwise expressly provided in this title

or in the Probate Code, subject to the payment of his debts, in the following manner:

.    .    .    .    .

(3) If the decedent leaves no issue, all of the estate, real and personal, of which the decedent died, seized or possessed, of not over $100,000 in value exclusive of debts and expenses, goes to the surviving husband or wife; and if over that value, $100,000 in value thereof goes to the surviving husband or wife, and the excess goes one-half to the surviving hus-

2. The application of the succession statutes requires that the Personal Representative determine the value of the net probate estate at the date of death, set aside to the surviving spouse the first $100,000 in value of the net probate estate and ½ of the excess over $100,000 in value. Calculate the portion of the estate this represents and apply the resulting percentage to the current value of the net distributable estate to determine the surviving spouse's share.

Respondent argues that proper application of section 74–4–5(3) requires a single valuation as of the date of distribution, with the surviving spouse receiving the first $100,000 in value and sharing the remainder with testator's collateral relatives. The problem with this argument is that respondent is precluded from seeking affirmative relief. Utah Rule of Civil Procedure 74(b) (1977) [30] provided that a prerequisite to a cross-appeal was the filing of a statement of points on cross-appeal. Respondent failed to timely file the required statement, and his motion for an extension of time within which to file points on cross-appeal was denied by this Court. Respondent may not raise this argument by way of his brief.[31]

Appellant states she is not questioning the trial court's interpretation of section 74–4–5(3). Her argument is simply that respondent should not be allowed to claim that the values of the assets in the estate at the time of distribution are any different from the values he previously assigned to those assets. Thus, the issue before us is a very narrow one, namely, whether respondent should be precluded from redetermining the value of the net estate.

Upon death, title to property owned by an intestate immediately passes to and vests in the heirs, subject to administration and payment of debts.[32] Every personal representative must make and return to the court within three months after his or her appointment a true inventory and appraisement of all the decedent's estate which has come to his or her possession or knowledge.[33] If additional property is later discovered, the personal representative must make a true inventory and appraisement of the same within two months thereafter.[34] The appraisement is made by three disinterested persons appointed by the court who subscribe an oath attached to the inventory that they will honestly appraise the property listed according to the best of their knowledge and ability.[35] When the inventory and appraisement have been completed, the personal representative is "chargeable in his account with the whole of the estate of the decedent ... at the value of the appraisement contained in the inventory."[36] When the estate is ready for distribution, the values assigned by the appraisers are relied upon in making distribution.

In the instant case, the personal representative has never filed an inventory. No appraisement was conducted by court-appointed appraisers. However, early in the administration of the estate, the personal representative prepared and filed a federal estate tax return on which he listed the

---

band or wife and the other half to the decedent's father and mother, in equal shares, and if either is dead, the whole of said half goes to the other; if there is no father or mother, then one-half of such excess goes in equal shares to the brothers and sisters of the decedent, and to children or grandchildren of any deceased brother or sister by right of representation; if the decedent leaves no issue or husband or wife, the estate must go to his father and mother in equal shares, and if either is dead then to the other.

**30.** Superseded by adoption of Rule 4(d), Rules of the Utah Supreme Court.

**31.** *See Cerritos Trucking Co. v. Utah Venture No. 1;* 645 P.2d 608, 613 (Utah 1982); *Terry v. Zions*

*Co-op Mercantile Inst.,* 617 P.2d 700, 701–02 (Utah 1980).

**32.** *See* Utah Code Ann. § 74–4–2 (1953) (repealed 1977); *see also Chamberlain v. Larsen,* 83 Utah 420, 424–25, 29 P.2d 355, 357 (1934).

**33.** Utah Code Ann. § 75–7–1 (1953) (repealed 1977).

**34.** *Id.*

**35.** Utah Code Ann. § 75–7–3 (1953) (repealed 1977).

**36.** Utah Code Ann. § 75–11–20 (1953) (repealed 1977).

assets of the estate and assigned date-of-death values to each of them. The tax return was filed under penalty of perjury, and in it the personal representative verified that the values shown were true and correct. Six years later, the personal representative filed his petition seeking to close the administration of the decedent's estate. The petition included the personal representative's first and final accounting in which he set forth the date-of-death values for the assets. The values shown by him in his account were identical to those shown on his federal estate return.

The record does not sufficiently disclose the reason why the personal representative on the eve of distribution of the estate by the court in 1983 wanted to redetermine the date-of-death values of some or all of the assets of the estate. There are no written motions or allegations of fact on which to form a basis for any redetermination. In the absence of a showing of need or justification for redetermination of the date-of-death values, we reverse the order of the trial court which permitted redetermination.

We remand for entry of judgment in accordance with this opinion. No costs awarded.

STEWART, Associate C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.