896 P.2d 247

In the Matter of the ESTATE OF Janya
KROKOWSKY aka Jeanette
Krokowsky, Deceased.

Merle FEITLER, Plaintiff/Appellant,

v.

David LaCHANCE, Guardian and Conser-
vator for the Estate of Mary M. Brown,
Devisee, Defendant/Appellee.

No. CV–94–0097–PR.

Supreme Court of Arizona,
En Banc.

June 8, 1995.

■■■■■■■

Arnold & Porter by Alvin H. Shrago, New York City, Jennings, Strouss & Salmon by James M. Ackerman and John R. Becker, Phoenix, for appellant Merle Feitler and Estate of Janya Krokowsky.

Lewis and Roca by Patricia K. Norris, Thomas E. Klinkel and Greg S. Como, Phoenix, for appellee David LaChance and Estate of Mary M. Brown.

Rosepink & Estes by David J. Estes, Scottsdale, for amicus curiae The Probate and Trust Law Section of the State Bar of Arizona.

## OPINION

MOELLER, Vice Chief Justice.

This case involves the interpretation of the will of Janya Krokowsky ("decedent"). Decedent's niece and heir-at-law Merle Feitler challenges the rulings of the trial court and the court of appeals, both of which held, to varying degrees, that the will granted decedent's longtime friend, Mary Brown, a general power of appointment which, in turn, could be exercised by Brown's guardian/conservator. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and Ariz.R.Civ.App.P. 23. For reasons stated below, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On June 30, 1981, the decedent executed a will.[1] The parties do not dispute the will's authenticity or validity. It reads as follows:

My last will and testament, this 30th day of June, 1981

(1) Being of sound mind and body, I wish to make clear the division of my worldly goods in the event of my death. I do not take life for granted and having acquired material things, this clarifies their disposition.

(2) I hereby appoint Mary M. Brown to act with power of attorney for me. With her wisdom she will carry out my wishes. She now resides at 9838 No. 17th St., Phx.

(3) First, I leave my home at 1208 East Solano Drive, Phoenix 85014 Arizona to Mary Brown. In the event of her death, the house minus furnishings is bequeathed to the State of Israel in memory of my beloved mother, Esther Zolonge. The contents of the home can be given to friends whose friendship has been important in my life. Dr. David LaChance, Charles Braymer, Ruth Dippell.

(4) All my investments I leave to my sister, Vishka K. Herbert. They are the following: [list of investments].

(5) Nothing I owned is to be given to Merle Feitler, or members of her family or Howard Shlay and members of his family. A $100 token for each of them is allowed in case of any dispute. I have been very disappointed in their lack of sensitivity and consideration toward my deceased sister, Marion Stein, their mother. Their selfish motivation and self concern is a painful remembrance to me.

(6) To Mary M. Brown, with power of attorney, their [sic] is a savings account at the Willetta branch Valley Nat. Bank to take care of my remains at Greenwood Mausoleum at North Van Buren St. My checking account is for expenses occurring in that regard too. A small Desert Schools Credit Union Act. 817 will be of further help.

(7) My netsukes are the property of Mary M. Brown. Her acts of caring and devotion have entitled her to many things I valued.

(8) I want no eulogies, a simple grave site Hebrew prayer.

(9) In the event my heirs, my sister Vishka K. Herbert, or Mary Brown are not able to fulfill their part in this my last will and testament an attorney from the Valley Bank trust department designated below can do so.

---

1. The court of appeals and some of the parties refer to the will as holographic. Although the will is handwritten, it was witnessed by two witnesses and appears to qualify as a will under Ariz.Rev.Stat.Ann. (A.R.S.) § 14–2502 (1995).

(10) No bond is required for Mary M. Brown attorney:

signed: Janya Krokowsky Mattes
 1208 E. Solano Dr.
 Phoenix 14 Az.
 June 30, 1981
Witnessed by: David LaChance 7/6/81
 Charles J. Boehmer Jr.
 7–6–81

In 1986, the decedent's sister, named as beneficiary of the investments listed in paragraph 4 of the will, predeceased the decedent and left a substantial sum of money to her. Thus, decedent's legacy of her investments to her sister lapsed and became part of her residuary estate. Also in 1986, the decedent moved from her home on Solano Drive in Phoenix to a home in California, which she and Mary Brown purchased and held in joint tenancy. Decedent sold the Solano Drive home shortly thereafter, but reacquired it in 1990 in a trustee's sale. She still owned it when she died.

The decedent died on July 28, 1991. Her only surviving heirs are her niece, appellant Merle Feitler, and her nephew, Howard Shlay, both of whom were expressly disinherited in paragraph 5 of the will. The will was admitted to probate, and Feitler was appointed personal representative.

By the time of decedent's death, her friend Mary Brown suffered from Alzheimer's disease and heart problems. In a separate action, she was declared incompetent, and Dr. David LaChance was appointed conservator and guardian for her. He filed a Petition for Interpretation of Will asking the trial court (1) to interpret paragraph 3 of the will as giving the Solano Drive home to Brown, (2) to interpret paragraph 6 as giving the Valley National Bank savings account to Brown, and (3) to interpret the will as containing "the equivalent of a residuary clause" giving decedent's residuary estate to Brown. Later, LaChance filed a supplement asking the trial court, in the alternative, to interpret

paragraph 2 and other provisions in the will as granting a general power of appointment to Brown, entitling LaChance, as Brown's guardian/conservator, to dispose of all property not otherwise disposed of in the will.

The niece objected to the guardian's proposed interpretations, arguing that the only valid specific bequest in the will was the bequest of decedent's netsukes (Japanese hand-carvings) to Brown. The niece argued that the will contained no residuary clause, did not grant a power of appointment, and thus did not dispose of the entire estate. Under the niece's argument, the entire estate, except for the netsukes, would pass to her and her brother by intestate succession.[2]

The parties submitted the issues to the trial court on stipulated facts. Prior to his retirement, Judge Morris Rozar determined that the will should be construed (1) to transfer the Solano Drive home to Brown, (2) to transfer the Valley National Bank savings account to Brown, and (3) as giving Brown a general power of appointment over the estate, except for those items subject to specific bequest or devise. Following Judge Rozar's retirement, Judge Robert Myers entered formal written judgment in accordance with Judge Rozar's earlier rulings. La-Chance was appointed successor personal representative, replacing the niece.

The niece appealed. The court of appeals affirmed in a published opinion. *Matter of Estate of Krokowsky*, 180 Ariz. 190, 883 P.2d 427 (App.1993). That court went further than Judge Rozar and held that the will gave Brown a general power of appointment over the entire estate. *Id.* at 194, 883 P.2d at 431. Because it also held that LaChance, as guardian/conservator, could exercise the power of appointment on Brown's behalf, all other potential issues were mooted. *Id.* We granted the niece's petition for review. Because we believe the language of the will does not entirely support the construction

---

2. Heirs who are disinherited by will can no longer take by intestate succession. A.R.S. § 14–2101(B) (1995). This new statute, however, is inapplicable here because it applies only to decedents dying on or after January 1, 1995. Had this statute been in effect at the time of dece-

dent's death, the residuary estate here may have escheated to the state (given our holding that there was no power of appointment given to Brown) because all surviving heirs and their families were disinherited in decedent's will.

that the lower courts have given it, we reverse in part, affirm in part, and remand.

## ISSUES

(1) The first issue we must resolve is whether the will grants Mary Brown a general power of appointment over the estate, either for the entire estate or for the residuary estate. Because we conclude that it does not, we must also resolve:

(2) Whether the will gives the Phoenix home to Brown;

(3) Whether the will gives the savings account to Brown; and

(4) Whether the will gives the residuary estate to Brown.

## DISCUSSION

■ At the time of decedent's death, A.R.S. § 14–2101 (repealed 1994) provided: "Any part of the estate of a decedent not effectively disposed of by his will passes to his heirs [by intestate succession]." In interpreting wills, courts favor testacy over intestacy, and if two constructions of a will are possible, the one upholding testacy is favored. *In re Estate of Vermeersch,* 109 Ariz. 125, 127, 506 P.2d 256, 258 (1973); *Newhall v. McGill,* 69 Ariz. 259, 266, 212 P.2d 764, 768 (1949). A court may not, however, write a will the testator did not write, and "a will is never open to interpretation merely because it does not dispose of all of the . . . property." *In re Estate of Barnes,* 63 Cal.2d 580, 47 Cal.Rptr. 480, 407 P.2d 656, 659 (1965) (citations omitted).

LaChance advances two theories under which the will would give the entire estate to Mary Brown, thus avoiding partial intestacy and precluding the heirs from taking anything. First, LaChance argues that the will, properly interpreted, leaves the entire estate, including the residuary estate, to Brown outright. Second, LaChance argues that the will gives Brown a general power of appointment, which he can exercise on Brown's behalf. Because the trial court and the court of appeals adopted LaChance's second argument, we discuss it first.

## I. Does the will give a general power of appointment to Mary Brown?

■ Paragraph 2 of the will reads: "I hereby appoint Mary M. Brown to act with power of attorney for me. With her wisdom she will carry out my wishes." Relying primarily on this language, LaChance argues that the will grants a general power of appointment to Mary Brown, thus giving her control over all of decedent's property. The court of appeals concluded that an "average lay person" might have intended with this language to create a general power of appointment. 180 Ariz. at 194, 883 P.2d at 431. We instead apply the long-accepted rule that the intent of the individual testator controls. *Franklin v. Jacobs,* 28 Ariz. 187, 193, 236 P. 694, 696 (1925).

■ A power of appointment is a power conferred upon another by will or by deed to select the person or persons who are to receive property from an estate upon the testator's death or upon the termination of an existing interest. *Black's Law Dictionary* 1054 (5th ed. 1979). The donee of a general power of appointment (as opposed to a special power of appointment) may exercise the power of appointment in favor of anyone, including himself. *In re Rowlands' Estate,* 73 Ariz. 337, 341, 241 P.2d 781, 784 (1952). A general power of appointment, thus, is an extraordinary power, and the law tolerates only limited ambiguity when determining whether such a power exists. *See Matter of Estate of Lewis,* 738 P.2d 617, 619 (Utah 1987). In order to grant such an extraordinary power, the law requires that the grantor must (1) intend to create a power, (2) indicate by whom the power is held, and (3) specify the property over which the power is to be exercised. *Id.*

■ The language of the decedent's will does not meet the first and third requirements. To create a power of appointment, the grantor must use words that plainly express or clearly imply his intent to create such a power. *Id.* at 620. We cannot infer a power of appointment unless there is a clear and unequivocal indication that the grantor intended to create one. *Id.* Applying this rule, courts have upheld a power of appointment where the testator's words clearly au-

thorize another person to dispose of specifically identified property. In *In re Rowlands' Estate*, this court held that the testator granted a power of appointment by writing, "All things not mentioned in my Will I leave up to Mr. and Mrs. Hugh Cuthbert, Sr. to distribute to any of my close friends. . . . If I have not mentioned anything I ought to have mentioned I leave it to your judgments Mr. and Mrs. Hugh Cuthbert Senior." 73 Ariz. at 339, 241 P.2d at 783; *see also In re Kuttler's Estate*, 160 Cal.App.2d 332, 325 P.2d 624, 626 (1958) ("Notify Earl Hayter or my sister Bertha McQuarrie . . . for them to dispose of my belongings as they see fit."); *In re Estate of Stewart*, 325 Pa.Super. 545, 473 A.2d 572, 573 ("Mrs. Hibbert . . . can handle my estate as she sees fit."), *aff'd*, 506 Pa. 336, 485 A.2d 391 (1984); *In re Lidston's Estate*, 32 Wash.2d 408, 202 P.2d 259, 261–62 (1949) ("I further direct my Executor dispose of any balance after the aforementioned gifts have been paid according to his wise discretion.").

■ The language of paragraph 2 of the decedent's will, in contrast to that quoted above, neither expresses nor implies an intent to authorize someone else to dispose of her property. First, there is no mention of any property. Second, the decedent did not instruct Brown to dispose of any property "as she sees fit." *See Kuttler*, 325 P.2d at 626; *Stewart*, 473 A.2d at 573. Instead, she appointed Brown to "act with power of attorney for me" and expressed confidence that Brown would use her wisdom to "carry out my wishes." Rather than grant to Brown a power to dispose of the property on her own, the decedent appears to have wanted Brown to act on the decedent's behalf, *i.e.*, in a fiduciary capacity. The parties agree that the decedent intended with this language to appoint Brown to administer the estate. We do not believe, however, that the language was intended to do more.

The decedent's treatment of Brown throughout the will reinforces our conclusion. Every other reference in the will to "Mary Brown with power of attorney" or to "Mary Brown attorney" is a clear reference to Brown in her capacity as a representative of the estate. In paragraph 6, the decedent wrote, "To Mary M. Brown, with power of attorney, their [sic] is a savings account . . . to take care of my remains." In paragraph 10, the decedent wrote that "[n]o bond is required for Mary M. Brown attorney." These references make sense only when directed to a fiduciary.

When, however, the decedent gave outright to Brown in paragraph 3 (home) and paragraph 7 (netsukes), she identified Brown by name only. The decedent therefore consistently distinguished between Brown as beneficiary and Brown as fiduciary; and in paragraphs 6 and 10, where the decedent clearly meant to refer to Brown as fiduciary, she used the terms "power of attorney" and "attorney." It is logical to conclude that she meant the same when she appointed Brown to "act with power of attorney for me" in paragraph 2. *See Lidston*, 202 P.2d at 264 (holding that "where the same words occur in different parts of a will and relate to the same subject matter, it will be presumed that they are used in the same sense.").

LaChance correctly emphasizes that it is possible for a will to name an individual as personal representative and to grant to that same individual a general power of appointment. *See Rowland*, 73 Ariz. at 339–41, 241 P.2d at 783 (same person appointed executor and given power of appointment over residue). This does not, however, change the fact that the language in the decedent's will fails to indicate clearly an intention to grant a power of appointment. Also, the cases that LaChance cites for support involve testators who distinguished between appointing a representative and granting a power to dispose of their property. They in fact used different language in different parts of their wills to accomplish each task. *See id.; Stewart*, 473 A.2d at 573.

LaChance, on the other hand, is asking us to construe the *same language* as both naming Brown personal representative and granting her a general power of appointment. We do not believe that the language in paragraph 2 accomplished that result. Furthermore, because of the fundamental difference between a personal representative and the donee of a general power of appointment, we

question whether the same language can ever simultaneously create both.

Finally, there is paragraph 9, which states that in the event Brown is "not able to fulfill [her] part in this my last will and testament," then an attorney "designated below" from the Valley National Bank can do so. If Brown's part under the will is to exercise a general power of appointment over all of decedent's property, then there is no logical interpretation of paragraph 9. It is absurd to think that, in the event Brown could not perform, the decedent intended to give to a Valley National Bank attorney, to be designated later, the power to dispose of all her property in any way that the attorney wished, including gifting it to himself or herself. *See Rowland,* 73 Ariz. at 341, 241 P.2d at 784 (donee of a general power of appointment may exercise it solely in his own favor). Nor can we find support in the will's language for LaChance's suggestion that the paragraph 9 reference to a bank's attorney should be limited to the situation where Brown is unable to act as personal representative, rather than as donee of a general power of appointment. We conclude, therefore, that the will does not clearly and unequivocally indicate an intention to grant a power of appointment.

As we have already suggested, the will also fails to meet the third requirement to create a power of appointment—specifying the property over which the power of appointment is to be exercised. LaChance argues otherwise and points to paragraph 1, where the decedent expressed her testamentary intention to "make clear the division of my worldly goods." If we were to construe this language as specifying the property subject to a valid power of appointment, then the power would extend over all the decedent's property. That result would render meaningless every specific bequest or devise in the will, a consequence the decedent could not have intended. *Newhall,* 69 Ariz. at 263, 212 P.2d at 766 ("Courts will assume that no testator intends to make conflicting provisions in his last will."). There is no explaining why the decedent would have expressly given her investments to her sister and at the same time given Brown the power to dispose of the investments in any way that she wanted. There is also no explaining why the decedent would have made specific gifts to Brown if she intended Brown to have authority to dispose of the entire estate within her own discretion.

In essence, LaChance asks us to conclude from the decedent's expression of testamentary intent and appointment of a personal representative—two provisions found in virtually every will—that the decedent granted a general power of appointment to the named representative. Such a holding, in our view, would unnecessarily blur the distinction between a personal representative and a donee of a power of appointment, making it difficult to tell in many cases whether the testator has appointed one but not the other. We cannot find in this will an indication that the decedent intended to give Brown the power to dispose of her property. Thus, we conclude that she did not grant a power of appointment.

## II. Does the will give decedent's entire estate to Brown?

LaChance also argues that the will gives decedent's entire estate to Brown through a series of outright gifts. The parties agree that the will gives the decedent's netsukes to Brown. They dispute, however, whether the will effectively gives to Brown (1) the decedent's Phoenix home, (2) the decedent's Valley National Bank savings account, and (3) the decedent's residuary estate. Because the court of appeals held that the will gave Brown a general power of appointment, it was unnecessary to reach these other issues. Our holding that the will does not give a power of appointment requires us to reach them.

### A. Does the will give the decedent's Phoenix home to Brown?

█ Paragraph 3 of the will reads, "First I leave my home at 1208 East Solano Drive, Phoenix 85014 Arizona to Mary Brown." When the decedent died, she owned the home at that address. Feitler argues that because the decedent no longer resided there, it was no longer her "home," therefore causing the gift to lapse. We disagree.

"[I]n order to make a specific legacy effective the property bequeathed must be in existence and owned by the testator at the time of his death." 80 Am.Jur.2d *Wills* § 1705 (1975). The will here specifically describes—by address, state, and zip code—a piece of property that the decedent owned at the time of her death. The decedent's use of the word "home" does not make the description any less clear and does not indicate to us that she intended to give the home to Brown only if she still lived there when she died. Indeed, Feitler offers no case where the devise of a "home" identified by address failed because the testator did not reside there at the time of death. We hold that the will gives the Solano Drive home to Brown.

**B. Does the will give the decedent's savings account to Brown?**

 Paragraph 6 of the will reads:

To Mary M. Brown, with power of attorney, their [sic] is a savings account at the Willetta branch Valley Nat. Bank to take care of my remains at the Greenwood Mausoleum at North Van Buren St. My checking account is for expenses occurring in that regard too. A small Desert Schools Credit Union Act. 817 will be of further help.

The parties dispute whether this language gives the savings account to Brown. We hold that it does not. To effectively give property, the donative intent of the testator "must appear from the fair and reasonable reading of the language of the will." *In re Conness' Estate,* 73 Ariz. 216, 219, 240 P.2d 176, 179 (1952). Words like "I give" and "I bequeath" generally indicate donative intent. We have also held that words like "leave to" and "is to receive," although not synonymous with "I give," can express donative intent in the proper context. *Id.*

There is no language in paragraph 6 that we can fairly interpret as expressing donative intent. There is only the language, "To Mary Brown, with power of attorney, their [sic] is a savings account...." This language does not include words that typically communicate donative intent, like those used by the decedent herself in other, clearly donative provisions of her will ("I leave," "is

bequeathed to," and "is the property of"). It merely states that certain property exists.

The context of the words also belies the suggestion that the decedent intended to give the account to Brown. Paragraph 6 is distinctly administrative in nature. The language of the paragraph, when read as a whole, addresses Brown in her fiduciary capacity ("To Mary M. Brown, with power of attorney") and identifies resources to be used in carrying out her duties as representative of the estate. The second and third sentences of paragraph 6 also identify accounts to be used for burial expenses, but they do not suggest in the least that the decedent intended to give the accounts to anyone.

The decedent knew how to use language clearly indicating an intent to give, yet did not do so in paragraph 6. Given her chosen language and its context, we conclude that the decedent's intent with regard to the savings account was instructive, not donative. After expenses, then, the balance of the account is part of the decedent's residuary estate.

**C. Does the will impliedly give the decedent's residuary estate to Brown?**

 The will does not contain a residuary clause. LaChance argues nevertheless that the will should be construed as having the "equivalent of a residuary clause" because its language evidences the decedent's "residuary intent in favor of Mary Brown." He relies primarily on paragraph 7, which reads, "My netsukes are the property of Mary M. Brown. Her acts of caring and devotion have entitled her to many things I valued."

This language cannot be construed as a residuary clause. The first sentence makes a gift to Brown. The second explains the decedent's reason for making the gift. There is no mention in any form of the rest, remainder, or residue of the decedent's estate. Indeed, if the decedent intended in paragraph 7 to give Brown the remainder of the estate, she would not have needed to specifically bequeath the netsukes.

**284**

### CONCLUSION AND DISPOSITION

We conclude that the will, properly interpreted, gives to Brown the netsukes and the home at 1208 East Solano Drive. All other property, after expenses of administration, passes by intestate succession to decedent's heirs, Feitler and Shlay. *See* A.R.S. § 14-2101 (amended 1994). We acknowledge that this result may seem contrary to the decedent's wishes, at least as expressed ten years before her death. In the end, however, we find that decedent died partially intestate, and "[i]t is settled that a disinheritance clause, no matter how broadly or strongly phrased, operates only to prevent a claimant from taking under the will itself." *Barnes,* 407 P.2d at 659. *See generally* Annotation, *Effect of Will Provision Cutting Off Heir or Next of Kin, or Restricting Him to Provision Made, to Exclude Him from Distribution of Intestate Property,* 100 A.L.R.2d 322 (1965). The decedent did not provide in her will for the contingency of her sister predeceasing her, an event that had significant effect on the decedent's holdings and on her estate. Nor did her will contain a residuary clause. We cannot now speculate on what the decedent would have done had she anticipated intervening events. *In re Estate of Harber,* 99 Ariz. 323, 326, 409 P.2d 31, 33 (1965) ("Our courts will effectuate the testator's general intent, but not to the extent of making a will for him."); *see also* 100 A.L.R.2d at 328 (courts generally have not implied gifts to others mentioned in the will to avoid intestacy).

We believe the court of appeals went too far in trying to carry out what it presumed to be the decedent's intent. To construe the language in this will as creating a general power of appointment may well lead, in a future case, to the disinheritance of loved and loving heirs in favor of a stranger. This case proves the adage that hard cases make bad law. We must not make bad law for many cases to reach what some may perceive as a "good" result in one.

Accordingly, we vacate the court of appeals opinion, reverse the judgment of the trial court, and remand to the trial court for entry of judgment consistent with this opinion.

FELDMAN, C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.