NELSON, et al, Respondents, v. STATE, et al, Appellants.

(240 N. W. 345.)

(File No. 7014.   Opinion filed January 25, 1932.)

M. Q. Sharpe, Attorney General, and E. D. Roberts and Benj. D. Mintener, Assistant Attorneys General, for Appellants.

Danforth & Barron, of Sioux Falls, for Respondents.

CAMPBELL, P. J.   It has always been the law of this state that on failure of title from defect of heirs the property of a decedent should escheat to the state. Comp. Laws 1887, § 3418, Civ. Code 1903, § 1111, Rev. Code 1919, § 718.   By chapter 104, Laws 1909, which subsequently became section 3049-3059, R. C. 1919, a mode of procedure was established with reference to escheats. The

statute provided, in substance, for an action in equity in circuit court in the name of the state to recover the property, reduce it to possession, and determine all adverse claims thereto, in which action persons unknown might be designated as defendants and served by publication. Provision was made for appeal from the circuit to the Supreme Court, and section 7 of the act (section 3055, R. C. 1919) provided that the judgment of the circuit court "shall be final and conclusive as to the title of the property of the estate, real or personal, subject only to the right of appeal as hereinafter provided." Section 10 of the act (section 3058, R. C. 1919) provided as follows:

"Within five years after judgment in any suit brought under the provisions of this article, any person not a party or privy to such action, and who had no notice or knowledge thereof, may file a verified complaint in the circuit court of the county where such action was brought, alleging his claim or right to said property or the proceeds thereof. A copy of such complaint shall be served upon the states attorney of the county and the attorney general, who shall within thirty days thereafter answer the same, and the court thereupon must try the issue as in the original action and if judgment shall be awarded the claimant, the court must order the property, if not sold, to be delivered to him by the receiver or the commissioner of school and public lands, or if it has been sold and the proceeds paid into the state treasury as a part of the school fund, the court must order the state auditor to draw his warrant on the state treasurer for the payment of the same out of the school fund, but without interest or costs; a copy of which order, under seal of the court, shall be a sufficient voucher for drawing such warrant. No judgment shall be rendered in favor of such person for a sum in excess of the principal received into the school fund, exclusive of interest, rents and profits; it being the intention of this section that any interest, rents or profits derived from said principal shall be retained in said school fund as compensation for the care and preservation of said property. All persons who fail to appear and file their complaint within the time limited by this article are forever barred, saving, however, to infants and persons of unsound mind the right to appear and file their complaint within one year after their respective disabilities cease."

This section was amended by section 2, c. 119, Laws 1929, to read as follows: "In all cases where property has or may be hereafter escheated to the State of South Dakota by proceedings had in any court of this State, any person or persons who may be legally entitled to the same or an heir or heirs of the deceased person whose property was escheated by such proceedings, who was not a party or privy to such proceedings and who had no notice or knowledge thereof, may bring an action against the State of South Dakota for the recovery of such property within ten (10) years from the entry of the decree or the judgment of escheat. Such claimant or claimants may serve and file a summons and a verified complaint in the circuit court of the county where such action was brought, alleging his claim or right to said property or the proceeds thereof. A copy of such summons and complaint shall be served upon the state's attorney of the county, and the attorney general, who shall within thirty days thereafter answer the same, and the court thereupon must try the issue as in the original action and if judgment shall be awarded the claimant, the court must order the property, if not sold, to be delivered to him by the receiver, administrator, or the commissioner of school and public lands, or if it has been sold and the proceeds paid into the state treasury as a part of the school fund, the legislature shall provide for the payment of the same. No judgment shall be rendered in favor of such person for a sum in excess of the principal received into the school fund, exclusive of interest, rents and profits; it being the intent of this section that any interest or profits derived from said principal shall be retained in said school fund as compensation for the care and preservation of said property. All persons who fail to appear and file their complaint within the time limited by this article are forever barred, saving, however, to infants and persons of unsound mind the right to appear and file their complaint within one year after their respective disabilities cease."

One Nelson died in Moody county, S. D., in 1918, owning real and personal property. No heirs appearing, proceedings were instituted by the state under the provisions of the 1909 law for the escheat of the property, resulting in a judgment in December, 1920, declaring all the property escheated. Thereafter the personalty was converted into money which went into the school fund,

likewise part of the realty. The remainder of the realty is unsold and under the management of the superintendent of school and public lands.

After the passage of the 1929 amendment above referred to, and considerably more than five, but less than ten years after the escheat judgment, plaintiffs claiming to be heirs of Nelson, without notice or knowledge of the escheat proceedings of 1920, instituted this action seeking a return of the realty still undisposed of and a money judgment for an amount equivalent to the proceeds of the realty and personalty that was sold for the benefit of the school fund.

The sole question presented by this appeal is whether or not plaintiffs, by virtue of the 1929 statute, are entitled to maintain this action, notwithstanding the fact that no proceedings had been previously instituted by plaintiffs and that more than five years had elapsed after the escheat judgment before the passage of the 1929 statute.

Defendants rely upon two propositions, the first having to do with the construction of the 1929 statute, and the second with its validity.

Under pre-existing law, an action such as respondents now seek to maintain could not be instituted (with exceptions not here material in case of infants or persons of unsound mind), unless brought within five years after the escheat judgment. Defendants maintain that the Legislature did not intend by the 1929 act to create any new rights, or to revive any rights which had been lost, or with reference to which the right of enforcement had been lost, by the lapse of five years after an escheat judgment. The language of the 1929 amendment is as broad as could well be conceived. It provides that action may be instituted within ten years from the entry of the decree or judgment of escheat "in all cases where property has or may be hereafter escheated." As a matter of meaning of words, we see no escape from holding that the Legislature intended the statute to apply retrospectively, as well as prospectively, just as they said it should apply; that is, to all cases where property had escheated within ten years. To hold otherwise, as a matter solely of interpretation or construction of language, would be to read into the statute an exception which the Legislature never put there and to do so in the face of legis-

lative language so inclusive as affirmatively to preclude a deduction from the mere words themselves of any legislative intention to make an exception.

██ Defendants' second contention is that, if the 1929 amendment be construed (as we have indicated it must) to be applicable in terms to escheat judgments already more than five years old when the 1929 amendment took effect, the law is pro tanto invalid and unconstitutional. To this contention also we find ourselves unable to agree. We will assume, without deciding, that these defendants are entitled to raise constitutional questions as to legislative acts. The situation here is not parallel to the operation of the ordinary statute of limitations as between individuals. In the case of the individual, he may very well, by lapse of time, acquire a right in the nature of a property right or a right to freedom from assertion of adverse claimants which is not subject thereafter to legislative interference. No such case is presented here, and cases holding that a right lost by limitations cannot thereafter be recreated by legislative fiat are not in point. Strictly speaking, it may well be questioned whether either section 3058, R. C. 1919, or the amendment thereof by section 2, c. 119, Laws 1929, are statutes of limitation. At least it is very plain that, if they partake of the nature of statutes of limitation, they are, in addition, something more. By section 3055, R. C. 1919, an escheat judgment once rendered is final, subject only to the right of appeal. Neither section 3058, R. C. 1919, nor the amendment thereof creates a right on the part of any one to disturb the escheat judgment. The sovereign state, however, has neither desire nor moral right to escheat property, if there are in fact heirs, even though they may be negligent or dilatory in establishing their heirship. The statute (section 718, R. C. 1919) contemplates that property shall escheat only in case "there is no one capable of succeeding * * * and the title fails from a defect of heirs." Section 3058 was merely legislative recognition of the fact that it may upon occasion happen that the state will escheat property in the honest but erroneous belief that there are no heirs. When that happens, the state, however unintentionally, in view of our present law, has wronged the heirs. Section 3058 and the amendatory act do not in anywise impair the validity of the escheat judgment, but merely evidence a willingness upon the part of the state in certain cases and within

a given time to repair the wrong it has unwittingly done by taking an escheat judgment when in fact there were heirs, and a lack of desire to profit, legally but essentially inequitably, by failure of the heirs earlier to appear. We can conceive of no reason why the sovereign state may not, at any time and under such conditions as it may see fit, compensate, either wholly or partially, the heirs of a decedent for the wrong the state unintentionally did them in escheating the property of their ancestor in the mistaken belief that no heirs existed. We know of no theory upon which the state is bound to continue to hold, at the expense of others property which it reached out and took because of an erroneous impression as to facts. The state may be entitled so to do, but certainly it lies within the legislative discretion for the state to refrain from so doing.

█ Defendants particularly urge against the validity of the statute, section 2, art. 8, of the South Dakota Constitution, reading as follows: "All proceeds of the sale of public lands that have heretofore been or may hereafter be given by the United States for the use of public schools in the state; all such per centum as may be granted by the United States on the sales of public lands; the proceeds of all property that shall fall to the state by escheat; the proceeds of all gifts or donations to the state for public schools or not otherwise appropriated by the terms of the gift; and all property otherwise acquired for public schools, shall be and remain a perpetual fund for the maintenance of public schools in the state. It shall be deemed a trust fund held by the state. The principal shall forever remain inviolate, and may be increased, but shall never be diminished, and the state shall make good all losses thereof which may in any manner occur."

We need not decide whether this constitutional provision would prevent the Legislature under any and all conceivable circumstances from authorizing the taking out from the school fund of the proceeds of escheated property which had gone into the fund. The 1929 amendatory act here involved does not attempt to authorize the taking of any proceeds of escheated property out of the school fund. In so far as the escheated property has been sold and the money paid into the school fund, the most that plaintiffs could be entitled to would be a compensatory money judgment as provided for by the statute, payable, not out of the school fund, but if, when,

and in such manner as some future "legislature shall provide for the payment of the same." So far as the unsold escheated realty is concerned, we can see nothing in the above-quoted constitutional provision to prevent the state at any time from surrendering the same to the heirs of the decedent in recognition of the fact that the circumstance, and the only circumstance, when according to the statute escheat is really intended, to wit, the failure of heirs, never in truth existed. The intent of this constitutional provision is that the school fund shall never be diminished nor diverted to other purposes, but we are unable to read into this constitutional provision anything which would prevent the state from acting in good conscience and returning, under such circumstances and in such manner as the Legislature may deem fit, to the heirs of a decedent unsold realty for which the state paid nothing and which the state escheated under the erroneous belief that there were no heirs. The existence of, and restrictions upon, a permanent school fund, were never intended, and should not be permitted, to prevent the sovereign state from voluntarily repairing, whenever the Legislature so wills, any wrongs it has previously unwittingly done, at least to the extent that it has thereby benefited.

We think the learned trial judge ruled the matter correctly, and the order from which defendants have appealed is affirmed.

POLLEY and RUDOLPH, JJ., concur.

ROBERTS and WARREN, JJ., disqualified and not participating.