DOROTHY KIMLEY, ADMINISTRATRIX, C. T. A., UNDER THE WILL OF FRANCES M. LULA, DECEASED, PLAIN-TIFF-RESPONDENT, v. EDWARD WHITTAKER, GEORGE WHITTAKER, MARY ROBERTSON, WILLIAM WHIT-TAKER, JOSEPH WHITTAKER, LILLIAN McFARLAND, CHESTER ROSEWALL, CHARLES ROSEWALL, AND THOMAS ROSEWALL, DEFENDANTS, AND MARY SMITH, DEFENDANT-APPELLANT.

Argued April 23, 1973—Decided June 26, 1973.

Mr. *Francis E. Malloy* argued the cause for appellant.

Mr. *Frank W. Thatcher* argued the cause for respondent (*Mr. D. Vincent Lazzaro,* attorney).

The opinion of the Court was delivered by

SULLIVAN, J. This is a will case. Decedent Frances M. Lula died August 30, 1970 leaving a will dated December 2, 1955 wherein she left her entire estate to her husband Walter, but made no provision for alternate disposition in the event he predeceased her. In fact, she survived her husband.[1]

The operative provisions of decedent's will, which was duly admitted to probate, are as follows:

"FOURTH: I do hereby give unto my husband Walter Anthony Lula all of the property, real, personal and mixed, together with all rights, titles and interest, of which I may die seized or possessed, or have any claim to or interest in without any restriction whatsoever, absolutely and in fee.

FIFTH: For reasons I care not to disclose, I hereby make no provision for my daughter, Mary Palmer, nor my grandchildren and it is my will that my daughter and grandchildren be deprived of any interest whatsoever that I may own at my death.

SIXTH: Those of my heirs not herein mentioned or provided for have been omitted by me with full knowledge thereof."

Decedent was survived by a daughter, Mary Palmer Smith, the appellant herein. She also left several half-brothers and half-sisters, and children of a deceased half-sister. All parties agreed that the bequest to the husband had lapsed and that the estate should be distributed under the statute governing the descent and distribution of intestate property. *N. J. S. A.* 3A:4–1 *et seq.* However, the half-brothers and half-sisters contended, and the trial court and Appellate Division held, that paragraph Fifth of decedent's will constituted a strong and unambiguous expression of intent to exclude decedent's daughter and the daughter's children from receiving any part of decedent's estate even though it was distributed as intestate property under the statute. The judgment was that the daughter, who normally would have

---

[1]The husband died a few hours prior to decedent's death. This is admitted to be pure coincidence as the deaths were unrelated.

received the entire estate under the statute as the sole heir of decedent, was barred from inheriting. Instead, the estate was divided among decedent's half-brothers and half-sisters, the children of a deceased half-sister sharing *per stirpes*. We granted certification. 62 *N. J.* 188 (1972).

It is stated as a general rule in this country that an exclusionary provision in a will as to an heir or next-of-kin is not efficacious to bar that heir or next-of-kin from inheriting intestate property of the testator, even though so intended. 4 *Page, Wills* (Bowe-Parker Rev. 1961) § 30.17, p. 115. One reason given for the rule is that since the intestate property passes by law, not by will, the statute, not the testator, controls its distribution.

New Jersey cases dealing with the subject are not uniform in their approach. Some follow the general rule and state that words of exclusion or disinheritance in a will have no effect upon the right of an heir or next-of-kin to take under the statutes of descent and distribution — that a testator's intention is of no force in such case. *Lawes v. Lynch,* 7 *N. J. Super.* 584, 590 (Ch. 1950), aff'd on other grounds 6 *N. J.* 1 (1950); *Maxwell v. Maxwell,* 122 *N. J. Eq.* 247, 254–255 (Ch. 1937); *Skellenger's Executors v. Skellenger's Executor,* 32 *N. J. Eq.* 659, 663 (Ch. 1880).

Other New Jersey cases state that the testator's intent would control, but that such intent must be clearly expressed and the words used free from doubt. *Graydon's Ex'r v. Graydon,* 25 *N. J. Eq.* 561, 564 (E. & A. 1874); *Ward v. Dodd,* 41 *N. J. Eq.* 414, 416 (Ch. 1886); *Linell's Administrator v. Linell,* 21 *N. J. Eq.* 81, 83 (Ch. 1870). *Cf. Nagle v. Conard,* 79 *N. J. Eq.* 124 (Ch. 1911), aff'd 80 *N. J. Eq.* 252; 80 *N. J. Eq.* 253 (E. & A. 1912). However, in none of these cases were the words used found to be free from doubt.

Presumably a testator seeks to avoid intestacy. It is difficult to conceive of a situation where a person executing a will would have in mind possible intestacy and not make some provision to avoid such possibility. In the rare situation where a testator would consider possible intestacy, but

make no provision for disposition in that event, it would be logical to assume that the testator was content to have the distribution provided for in the statute apply, and, to that extent, would be impliedly incorporating the statutory plan of disposition into the will. On this basis, a situation would never occur where the general rule cited in *Page, supra,* would really become applicable.

We do not agree that the will herein, as drawn, expressed the clear intent of the decedent that her only daughter (and the daughter's children) be excluded from inheritance of intestate property. The will is poorly drafted. It left the entire estate to decedent's husband, but made no provision for alternate disposition in the event the husband predeceased the testatrix, although it recognized that possibilnty by providing for a substitute executor should the husband, who was named as executor, not survive the testatrix.

Paragraph Fifth can be read as a confirmation of paragraph Fourth wherein the entire estate is left to the husband. In other words, the testatrix might have intended to indicate that she was aware of her daughter and grandchildren, but, nevertheless, wanted everything to go to her husband. The "reasons" for the exclusionary clause, which testatrix said she cared "not to disclose," might have been the husband's needs or mental or physical condition. It cannot be said that the paragraph clearly expressed the intent that the daughter (and her children) be excluded should the bequest to the husband lapse. The reference in paragraph Sixth to the knowing omission of "[t]hose of my heirs not herein mentioned or provided for" would seem to indicate that the decedent had in mind testamentary disposition only.

Respondent suggests that since the will made no provision over in the event the husband died first, decedent intended to have the statutory plan apply and her will should be construed so as to incorporate by reference the statute governing descent and distribution, but at the same time exclude Mary Palmer Smith from participation. *Rowley v. Currie,* 94 *N. J. Eq.* 606 (Ch. 1923). This contention is unsupported

by any evidence either extrinsic or found in the will itself. It is pure speculation to say that decedent had intestacy in mind.

Our conclusion is (1) that decedent did not incorporate the statutory scheme of distribution into her will to be applicable in the event her husband predeceased her, and (2) that paragraph Fifth of decedent's will does not contain a clear expression of intent that it was to be effective where an intestacy has come about and the estate is being distributed under the statute.

The judgment of the Appellate Division is reversed and the matter remanded to the trial court for entry of an appropriate judgment in favor of appellant.

*For reversal and remandment*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, MOUNTAIN and SULLIVAN, and Judge COLLESTER—6.

*For affirmance*—None.