[No. C005601. Third Dist. Sept. 21, 1989.]

CAROLINE B. BOGERT, Plaintiff and Appellant, v.
GRAY DAVIS, as State Controller, etc., Defendant and Respondent.

**COUNSEL**

Guy G. Gibson for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Andrea Sheridan Ordin, Chief Assistant Attorney General, Carole Ritts Kornblum, Assistant Attorney General, and Peter K. Shack, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**PUGLIA, P. J.**—Appellant Caroline B. Bogert (Bogert) appeals from an order of the superior court denying her petition for distribution of assets escheated to the state from the estate of John C. Besch (decedent). As decedent's next of kin, Bogert contends she is entitled to unclaimed funds devised to an individual whose whereabouts are unknown. We disagree and shall affirm.

Decedent died testate in 1974, leaving funds to his foster daughter Jean Celaya (Celaya). Because Celaya could not be located, the funds were delivered to the county treasurer pursuant to Probate Code section 1060.[1] Thereafter the funds were transferred to the state controller pursuant to Code of Civil Procedure section 1444.[2] (Further statutory references to sections of

---

[1] On the date of delivery, November 28, 1975, Probate Code section 1060 provided in relevant part: "When property is assigned or distributed . . . to a distributee who cannot be found . . . and the same or any part thereof consists of money, the executor or administrator may deposit the money, in the name of the assignee or distributee, with the county treasurer . . . ." (Stats. 1967, ch. 719, § 3, p. 2090.)

[2] Section 1444 provides: "At the time of the next county settlement following the expiration of one year from the date of its deposit in the county treasury, all money or other property distributed in the administration of an estate of a deceased person and heretofore or hereafter deposited in the county treasury to the credit of known heirs, legatees, or devisees, and any

an undesignated code are to the Code of Civil Procedure.) The state controller held the funds for five years and then requested the Attorney General to commence escheat proceedings.[3]

On January 9, 1984, judgment was entered decreeing title to the funds to the state by escheat, thereby triggering a five year claims period pursuant to section 1430.[4] On February 9, 1988, Bogert filed a timely petition claiming to be the sister of the decedent and seeking distribution of the escheated funds. Although for policy reasons the state chose not to oppose the petition, it was nevertheless denied by the court in an order and judgment entered October 5, 1988. ■ ■ ■ ■ This appeal followed.[5]

Escheat is the process of "vesting in the state of title to property the whereabouts of whose owner is unknown or whose owner is unknown or which a known owner has refused to accept . . . ." (§ 1300, subd. (c).) Escheat is not automatic, however. The state must institute proceedings to establish its rights in property. These proceedings provide for notice and an opportunity for claims to be filed. (§ 1410 et seq.)

By decree of the probate court entered January 9, 1984, the funds devised to Celaya were conditionally escheated to the state, thereby initiating a five-year claims period.

---

money or other property remaining on deposit to the credit of an estate after final distribution to such known heirs, legatees or devisees, shall be paid to the Treasurer or Controller as provided in Chapter 2 [Code Civ. Proc. § 1310 et seq.]."

[3] Code of Civil Procedure section 1351 provides: "Unless otherwise provided in this title, all money or other property deposited in the State Treasury under the provision of this title, if not claimed by the person entitled thereto within five years from the date of such deposit, shall become the property of the State by escheat; and upon request by the Controller, the Attorney General shall commence a proceeding under the provision of Section 1410, or, in lieu of such proceeding, the Controller may take action as provided by Article 2 of Chapter 5, to have it adjudged, determined or established that the title to such money or other property has vested in the State."

Code of Civil Procedure section 1410 provides in relevant part: "The Attorney General shall, from time to time, commence actions on behalf of the state for the purpose of having it adjudged that title to unclaimed property to which the state had become entitled by escheat has vested in the state . . . . [¶] If it appears from the facts found or admitted that the state is entitled to the property or any part thereof mentioned in the petition, judgment shall be rendered that title to such property or part thereof, as the case may be, has vested in the state by escheat."

[4] Section 1430 provides, in relevant part: "Upon the expiration of five years after the date of entry of judgment in any proceeding had under this chapter, . . . the property covered by such proceeding or action is permanently escheated to the State . . . ." Claims may be filed pursuant to section 1355. (See fn. 7, *infra*.)

[5] A petition to recover an escheated estate is a civil action. (§ 1355; *Ebert v. State of California* (1949) 33 Cal.2d 502 [202 P.2d 1022].) Review is permitted under the rules governing appeals in civil actions (§ 904.1, subd. (a)), not the more restricted rules governing probate matters. (Prob. Code, §§ 7240, 7242 [formerly § 1297]; Stats. 1988, ch. 1199, § 80.5, operative July 1, 1989.)

Bogert contends, because the named legatee has not filed a claim within the statutory period and cannot be found, she is entitled to the funds as decedent's next of kin. She relies on *Mundt* v. *State of California* (1976) 54 Cal.App.3d 940 [127 Cal.Rptr. 20] in which the court permitted distribution of a decedent's estate to his cousins when his surviving brothers, whose whereabouts could not be determined, failed to appear or file a claim within the statutory period.

*Mundt* is distinguishable. In that case, funds were originally distributed to the state pursuant to Probate Code section 1027, which provides for such distribution whenever the heirs are *unknown*. (54 Cal.App.3d at p. 943.) When this occurs, the funds are held by the state in the name of the estate. (§ 1315.) Here, by contrast, funds were distributed to the state through Probate Code section 1060, whereby they are held "in the name of the assignee or distributee."[6] This distinction is fundamental.

Section 1355 permits any "person" to file a claim for funds escheated to the state, but allows distribution only to those "entitled to" the funds.[7] One claiming entitlement by virtue of descent must establish that he or she is an heir of the person in whose name the funds are held. In *Mundt,* the property was held in the name of the estate, so the cousins were entitled to the property as heirs of the deceased. Here on the other hand, Bogert's kinship to the decedent is irrelevant because the funds were being held in the name of Celaya. Only Celaya or *her* heirs were entitled to distribution.[8]

Relying on *Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678 [91 Cal.Rptr. 585, 478 P.2d 17], Bogert also contends the state could distribute the funds to her as the sole heir of the decedent, which it chose to do by not opposing her petition. In *Mannheim,* the court concluded rights in escheated property did not vest in the state until *permanent* escheat (following the five-year period). (At p. 690.) Until then, according to the court, the state

---

[6]See footnote 1, *ante,* page 775.

[7]Section 1355 provides in relevant part: "Within five years after date of entry of judgment in any proceeding had under the provisions of Chapter 5 [§ 1410 et seq.], or within five years after completion of notice by publication in an escheat action taken under the provisions of Section 1415, a person not a party or privy to such proceeding or action, if not otherwise barred, may file a petition in the Superior Court of the County of Sacramento, or as provided in Section 401, showing his claim or right to the money or other property, or the proceeds thereof. . . .

"The court must thereupon try the issue as issues are tried in civil actions; and if it is determined that such person is entitled to the money or other property or the proceeds thereof, it must order the property . . . to be delivered to him. . . ."

[8]As the court below recognized, the outcome would be different if Celaya had predeceased the decedent. (*Estate of McCurdy* (1925) 197 Cal. 276 [240 P. 498].) Had this occurred, the escheated funds would have been held in the name of the estate; however, there was no evidence presented that Celaya predeceased the decedent.

may distribute escheated funds to a claimant without running afoul of article XVI, section 6 of the California Constitution, which prohibits gifts of state property.[9]

*Mannheim* is inapposite. That case involved an amendment to Probate Code section 228 to prevent escheat of community property of spouses who die at different times if either leaves heirs. (3 Cal.3d at p. 684.) Before the amendment, the statute prohibited the heirs of a predeceased spouse from inheriting by intestate succession the community property share of the other spouse. (3 Cal.3d at p. 684, fn. 5.) In *Mannheim,* the amendment was not in effect at the time of death of the surviving spouse, so her community property share escheated to the state. Before completion of the claims period, however, the amendment went into effect, thereby making the heirs of her predeceased husband eligible for distribution.

The question presented in *Mannheim* was whether retroactive application of the amendment under these circumstances affected a gift of public funds. The court concluded the funds did not become public property until the end of the escheat period, at which time the new statute was in effect. (3 Cal.3d at p. 690.) Thus, according to the court, the state never obtained an undisputed right to the property and so could not make a gift of the property in violation of the state Constitution.

Here the question is not whether the proposed distribution violates the state Constitution but whether there is any statutory authority for it. In *Mannheim,* authority came from the amended statute; here authority is lacking. The court below correctly denied Bogert's petition for distribution of the subject funds.

The order is affirmed.

Sparks, J., and DeCristoforo, J., concurred.

---

[9] Article XVI, section 6 of the California Constitution provides in relevant part: "The Legislature shall have no power . . . to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever . . . ."