1997 SD 125

**In the Matter of the ESTATE OF Robert G. JETTER, Deceased.**

Nos. 19999, 20020.

Supreme Court of South Dakota.

Argued Aug. 7, 1997.

Decided Oct. 29, 1997.

Mark Barnett, Attorney General, David D. Wiest, Assistant Attorney General, Pierre, for appellant State of South Dakota.

Ronald C. Aho, Brookings, for appellee heirs of Frances Schwab Jetter.

James C. Robbennolt, Pierre, Joseph M. Butler and Allen G. Nelson, Rapid City, for appellee heirs of John Carl Jetter.

GILBERTSON, Justice.

[¶ 1.] The State of South Dakota and the Office of the Commissioner of School and Public Lands (State) appeal from a trial court's order denying the State's claim of escheat. We affirm.

### FACTS AND PROCEDURE

[¶ 2.] Robert G. Jetter (Jetter) and his brother Martin farmed and ranched together in Haakon County near Milesville, South Dakota. Neither brother ever married nor had children. They spent their entire lives solely devoted to their ranching pursuits and through decades of diligent hard work, they were successful at it.

[¶ 3.] In 1981, Jetter contacted attorney Russell C. Molstad and executed a will which devised all of his property to his brother Martin in the second provision to the will. Viewed in isolation, the will's third provision purported to disinherit all of Jetter's other relatives:

I have intentionally omitted all of my heirs and all other persons whomsoever, who are not specifically mentioned herein, and I hereby generally and specifically disinherit each and all persons whomsoever claiming to be my heirs-at-law and each and all persons whomsoever who, if I died intestate, would be entitled to any part of my estate except those herein provided for.

The following year, Martin contacted attorney Molstad and executed a nearly identical will, leaving all of his property to Jetter and including a provision purporting to disinherit all of Martin's other relatives.

[¶ 4.] Martin died in December 1990. Jetter inherited all of Martin's property under his will. At the time of Martin's death, Jetter was incompetent and remained so up until his death. He was living in a nursing home and did not attend his brother's funeral. He was unaware his brother had died and was likewise unaware of any of his relatives or of the nature and extent of any property he owned. A guardianship was established for Jetter approximately one month after Martin died.

[¶ 5.] Jetter died six years later on October 2, 1996. At the time of his death, he was still residing in a nursing home in Philip, South Dakota. He had amassed an estate estimated to be worth 3.2 million dollars in real and personal property. The will he executed in 1981 was admitted into probate and declared valid.

[¶ 6.] The personal representative petitioned for determination of heirship. A hearing on this petition was held December 5, 1996. Following that hearing, the trial court ruled the disinheriting clause in Jetter's will was not applicable and that his estate was to pass to his heirs by intestate succession unrestricted by the disputed "disinheritance" clause. The court concluded "[t]he plain language of Robert G. Jetter's Will indicates that he wanted to disinherit his other heirs if Martin was [sic] alive, but there is no indication that he intended to disinherit them if Martin Jetter predeceased him." From this, the trial court concluded the will made an ineffective disposition and that Jetter's property would be distributed pursuant to the law of intestacy.

[¶ 7.] The trial court denied the State's escheat claim. The State motioned for reconsideration of the court's decision. Following a hearing, this motion was denied. The State now appeals raising the following issues:

1) Whether SDCL 29A-2-101 mandates that words of disinheritance in Jetter's will apply to the testator's property?

2) Whether the disinheriting clause in Jetter's will is ambiguous?

3) Whether the trial court erred in holding that Jetter's estate passes by intestate succession to his heirs?

[¶ 8.] Appellees are heirs of Frances Schwab Jetter, Jetter's mother, and heirs of John Carl Jetter, Jetter's alleged half-blood brother. Heirs of John Carl Jetter filed a notice of review but waived consideration of any issues raised therein by failing to brief them. SDCL 15–26A–60(6); *Peterson v. Safway Steel Scaffolds Co.*, 400 N.W.2d 909, 912 (S.D.1987).

## DECISION

[¶ 9.] **1. Whether SDCL 29A–2–101 mandates that words of disinheritance in Jetter's will apply to the testator's property?**

■ [¶ 10.] SDCL 29A–2–101 is part of the newly-enacted South Dakota Uniform Probate Code and this Court has not, until now, had the opportunity to interpret this statute.[1] The question presented is one of first impression. This Court interprets statutes under a de novo standard of review without deference to the decision of the trial court. *City of Brookings v. Winker*, 1996 SD 129, ¶ 4, 554 N.W.2d 827, 828; *In re Estate of Steed*, 521 N.W.2d 675, 680 (S.D.1994).

[¶ 11.] In addition, this Court has previously noted:

Statutes are to be construed to give effect to each statute and so as to have them exist in harmony. *State v. Woods*, 361 N.W.2d 620, 622 (S.D.1985); *Matter of Exploration Permit Renewal*, 323 N.W.2d 858, 860 (S.D.1982). It is a fundamental rule of statutory construction that the intention of the law is to be primarily ascer-

tained from the language expressed in the statute. *Petition of Famous Brands, Inc.*, 347 N.W.2d 882, 884 (S.D.1984). In addition, we are statutorily mandated to interpret uniform laws such as the [UPC] 'to effectuate its general purpose to make uniform the law of those states which enact it.' SDCL 2–14–13.

*Rushmore State Bank v. Kurylas*, 424 N.W.2d 649, 653 (S.D.1988).

■ [¶ 12.] SDCL 29A–2–101 provides that:

(a) Any part of a decedent's estate not effectively disposed of by will or otherwise passes by intestate succession to the decedent's heirs as prescribed in this code, except as modified by the decedent's will.

(b) *A decedent by will may expressly exclude or limit the right of an individual or class to succeed to property of the decedent passing by intestate succession.* If that individual or a member of that class survives the decedent, *the share of the decedent's intestate estate to which that individual or class would have succeeded passes as if that individual or all members of that class had disclaimed their intestate shares.*

(emphasis added). This statute was adopted from the Uniform Probate Code § 2–101, 1990 version, and is nearly identical to UPC § 2–101.[2] As such, it is appropriate to examine the Official Comment to the 1990 revision of UPC § 2–101(b):

New subsection (b) authorizes the decedent, by will, to exclude or limit the right of an individual or class to share in the decedent's intestate estate, in effect disin-

---

1. South Dakota's Uniform Probate Code, SDCL Title 29A, became effective July 1, 1995 and is applicable here as it applies to decedents dying on or after July 1, 1995, to their estates, and to identification and rights of their successors, and "to governing instruments executed by decedents dying on or after July 1, 1995, no matter when executed." SDCL 29A–8–101(b)(2). *See In re Estate of Elliott*, 537 N.W.2d 660, 662 nn. 1 & 2 (S.D. 1995). None of the parties here attempt to argue that the UPC does not control the disposition of this case.

2. UPC § 2–101 provides:

(a) Any part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs as prescribed in this [Act], except as modified by the decedent's will.
(b) A decedent by will may expressly exclude or limit the right of an individual or class to succeed to property of the decedent passing by intestate succession. If that individual or a member of that class survives the decedent, the share of the decedent's intestate estate to which that individual or class would have succeeded passes as if that individual or each member of that class had disclaimed his [or her] intestate share.

heriting that individual or class. By specifically authorizing so-called negative wills, subsection (b) reverses the usually accepted common-law rule, which defeats a testator's intent for no sufficient reason. *See* Note, "The Intestate Claims of Heirs Excluded by Will: Should 'Negative Wills' Be Enforced?," 52 U.Chi.L.Rev. 177 (1985).

Comment, UPC § 2-101, 8 ULA 105 (Supp. 1997).[3] The Comment instructs that a "principal feature" of the 1990 revision is that "[s]o-called negative wills are authorized, under which the decedent who dies intestate, in whole or in part, can by will disinherit a particular heir." *Id.* at 104.[4] The Comment further states:

> Whether or not in an individual case the decedent's will has excluded or limited the right of an individual or class to take a share of the decedent's intestate estate is a question of construction. A clear case would be one in which the decedent's will expressly states that an individual [or class] is to receive none of the decedent's estate....
>
> An individual need not be identified by name to be excluded.... A group or class of relatives (such as 'my brothers and sisters') can also be excluded under this provision.

Id. at 105.

[¶ 13.] Thus, we are called upon to determine what constitutes a "class" within the confines of SDCL 29A-2-101. Is it limited to certain finite groups such as "my brothers and sisters," or is it so expansive as to constitute all those who would take as intestate heirs under a will thus allowing the State to argue that an escheat now exists?

[¶ 14.] Prior to the adoption of the Uniform Probate Code, a majority of states held that attempting to exclude an intestate heir from his or her share of intestate property was ineffective. This was referred to as the "American Rule." Other states followed what was known as the "English Rule," under which a testator could deprive an intestate heir of his or her intestate share if there were other heirs of the testator to take such property. *See generally, "The Intestate Claims of Heirs Excluded by Will: Should 'Negative Wills' be Enforced?,"* 52 U.Chi. L.Rev. 177 (1985). South Dakota never had cause to adopt either of these rules.

[¶ 15.] We were informed by the Jetter heirs that they can locate no case in the past three hundred years either in England or the United States whereby heirs were known to exist and yet an escheat was still allowed in favor of the crown or state. The State of South Dakota concedes this to be correct. However, the State argues that the South Dakota Legislature, in adopting the Uniform Probate Code, in essence rejected both the traditional American and English rules and opted for a new rule which would authorize an escheat even where heirs are known to exist. The Jetter heirs counter that the UPC adopted the English rule.

[¶ 16.] As an overall view, we would note that the UPC does not appear to be a revolutionary departure from past probate procedure. SDCL 29A-1-103 provides that: "[u]nless displaced by the particular provisions of this code, the principles of law and equity supplement its provisions."[5]

---

**3.** While helpful to determining what the drafters of the uniform law intended, it must be noted that comments to the uniform code were not adopted by the South Dakota Legislature and are therefore not binding statutory authority on this Court. *Rushmore State Bank*, 424 N.W.2d at 652 n.1 (citing *Sanborn County Bank v. Magness Livestock Exchange*, 410 N.W.2d 565, 568 (S.D.1987) (Miller, J., concurring in result)). In *Rushmore State Bank*, supra at n.9, we noted their especial helpfulness "in light of SDCL 2-14-13 ... which call[s] for uniform construction of acts such as the [UPC]." See *Sheehan v. Morris Irrigation, Inc.*, 460 N.W.2d 413, 415 (S.D.1990); *Bank of Hoven v. Rausch*, 382 N.W.2d 39, 41–42 (S.D. 1986); *In re Union Carbide Corp.*, 308 N.W.2d 753, 757 (S.D.1981); *Pearson v. Franklin Labs.,*

*Inc.*, 254 N.W.2d 133, 141 (S.D.1977) (for several cases in which this Court referred to the uniform code comments for guidance in interpreting statutes).

**4.** The disinherited heir or class of heirs is deemed to have disclaimed their intestate share, see SDCL 29A-2-101(b), and under the disclaimer statutes is deemed to have predeceased the decedent. See 29A-2-801(b).

**5.** Although no legislative history exists concerning the adoption of the UPC, the State Bar of South Dakota published educational materials in June of 1994 on the enactment of the UPC in this jurisdiction. Co-chairman of the Probate Re-

[¶ 17.] Although "class" is not defined by SDCL 29A–2–101(b), we would note 29A–2–603(c)(1) provides that a "class gift" excludes a devise to " 'heirs,' 'next of kin,' 'relatives,' 'family' or a class described by language of similar import." Further, SDCL 29A–3–914 provides that:

> [i]f an heir, devisee, or claimant *cannot be found,* the personal representative shall distribute the share of the missing person to the person's conservator, if any, otherwise the court shall enter an order directing that the share vest in the state of South Dakota for the support of the common schools.

(emphasis added). The other statute which deals with escheat is SDCL 29A–2–105. It provides "[i]f there is no taker under the provisions of this chapter, the intestate estate passes to the State of South Dakota *as provided in § 29A–3–914.*" (emphasis added). Both statutes by their express terms limit escheat to the State to situations where the heirs "cannot be found," but not where they were disinherited by a will.[6]

[¶ 18.] Thus, a review of all the pertinent statutes convinces us that the enactment of the UPC in South Dakota intended to adopt the English rule and that an escheat can exist only where no heirs can be found. Here heirs have been found. As such the State's claim for escheat fails under the above statutes.[7]

[¶ 19.] **2. Whether the disinheriting clause in Jetter's will is ambiguous?**

[¶ 20.] " 'Language is ambiguous when it is reasonably capable of being under-

form Committee of the State Bar, Professor David English, wrote that this Committee created the UPC work product which was adopted by the Legislature. Committee member Richard Kolker wrote that "South Dakota's adoption of a new probate code will not change the basic principles under which property is transferred from the decedent to the decedent's heirs." While this opinion is not binding on us any more than other commentary concerning the UPC, it is persuasive authority that contradicts the position argued by the State.

6. To reach the result proposed by the dissent, this Court would have to revise the statute to read, "If an heir, devisee, or claimant is disinherited...." Such revision is beyond the power of this Court and would constitute "judicial legislation," something this Court has heretofore refused to do:

> The intent of a statute must be determined from what the legislature said, rather than what this court thinks the legislature should have said; and the court must confine itself to the language of the statute. It is not the task of this court to revise or amend statutes, or to 'liberally construe a statute to avoid a seemingly harsh result where such action would do violence to the plain meaning of the statute under construction.'

*Sudbeck v. Dale Electronics, Inc.,* 519 N.W.2d 63, 67 (S.D.1994) (internal citations omitted). It would also conflict with the well-settled rule of statutory construction that "[w]ords and phrases in a statute must be given their plain meaning and effect." *Schipke v. Grad,* 1997 SD 38, ¶ 6, 562 N.W.2d 109, 111. The plain language meaning of the phrase "cannot be found" is "cannot be located" or "cannot be discovered" as other courts have determined in interpreting similar statutory phrasing. See *United States v. Rivera,* 942 F.Supp. 247, 249 (E.D.Va.1996) (interpreting federal immigration statutes); *Bogert v. Davis,* 214 Cal.App.3d 774, 263 Cal.Rptr. 129, 129 (1989) (discussing wills statute); *Comm. v. Walloe,* 472 Pa. 473, 372 A.2d 788, 790 (1977) (interpreting statute governing admission of testimony of a witness given at prior trial). "When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *Schipke,* 1997 SD 38, ¶ 6, 562 N.W.2d at 111. In the present case the heirs have been found; SDCL 29A–3–914 cannot then apply.

7. The Uniform Probate Code has been adopted, at least in part, by eighteen states. Eleven states have thus far adopted laws identical or nearly identical to UPC § 2–101(b): Alaska Statutes § 13.12.101 (effective January 1, 1997); ArizRevStatAnn § 14–2101 (effective January 1, 1995); ColoRevStat § 15–11–101 (effective July 1, 1995); Hawaii RevStat § 560:2–101 (effective January 1, 1997); MinnStatAnn § 524.2–101 (effective January 1, 1996); MontCodeAnn § 72–2–111 (effective October 1, 1993); NMStatAnn § 45–2–101 (effective 1993); NDCent Code § 30.1–04–01 (effective January 1, 1996); 20 PaConsStatAnn § 2101 (effective February 1, 1995); SDCL § 29A–2–101 (effective July 1, 1995); West Virginia Code § 42–1–2 (effective 1992).

Thus far, no state court has had cause to construe this statute, however, it is briefly mentioned in *In re Estate of Krokowsky,* 182 Ariz. 277, 896 P.2d 247, 249 n.2 (1995). We find the court's dictum unpersuasive as there is no analysis to support its conclusion that: "[h]ad this statute [2–101] been in effect at the time of decedent's death, the residuary estate here may have escheated to the state ... because all surviving heirs and their families were disinherited in decedent's will."

stood in more than one sense.'" *In re Estate of Olson*, 332 N.W.2d 711, 713 (S.D.1983) (quoting *Newton v. Erickson*, 73 S.D. 228, 236, 41 N.W.2d 545, 549 (1950)). "'[A]n ambiguity is not of itself created simply because the parties differ as to the interpretation of the [will].'" *City of Watertown v. Dakota, Minnesota & Eastern RR Co.*, 1996 SD 82, ¶ 21, 551 N.W.2d 571, 576 (quoting *Johnson v. Johnson*, 291 N.W.2d 776, 778–79 (S.D. 1980)). This Court reviews a will de novo, with no deference given to the trial court's interpretation. *In re Estate of Bol*, 429 N.W.2d 467, 470 (S.D.1988). "[A]ll the words and provisions appearing in [a] will must be given effect as far as possible, and none should be cast aside as meaningless." *In re Estate of Bock*, 85 S.D. 113, 115, 177 N.W.2d 734, 735 (1970).

[¶ 21.] The trial court prefaced its decision in this regard at the December 1996 hearing with the acknowledgment that the law abhors an escheat.[8] This doctrine has been long recognized in this State as it has in numerous other jurisdictions.

> The sovereign state, however, has neither desire nor moral right to escheat property, if there are in fact heirs, even though they may be negligent or dilatory in establishing their heirship.

*Nelson v. State*, 59 S.D. 410, 414, 240 N.W. 345, 347 (1932).

[¶ 22.] The State argues that the disinheriting clause does not state its effectiveness is contingent upon Martin's surviving Jetter, nor does it imply the same. Furthermore, the State claims that if Martin had survived Jetter, there would be no need for the disinheriting language as Martin would have taken all of Jetter's property under the second provision to the will; there would no be one to disinherit. The State argues that the disinheriting clause is only effective in the present situation—where Martin predeceases Jetter. "[A]ll words and provisions appearing in [a] will must be given effect as far as possible...." *Bock*, 85 S.D. at 115, 177

N.W.2d at 735. "To hold otherwise would be to convict a testator of performing useless acts." *Id.*

[¶ 23.] The trial court based its determination that the will was ambiguous on the following facts. The State of South Dakota was not expressly named as an heir under any circumstances in the will conveying an estate worth over three million dollars at the date of Jetter's death. The devise to Martin failed whether it be a general devise or a residuary clause as Martin predeceased Jetter leaving no descendants to take under an anti-lapse statute.[9] *See* SDCL 29A–2–603(a)(ii); 29A–2–604. The plain language of the will indicates that Jetter wanted to disinherit his other heirs if Martin was alive, but there is no indication Jetter intended to disinherit them if Martin predeceased Jetter. The will is silent on that point. As the heirs argue, "can it honestly be said, after resolving all doubts against the State, that Robert Jetter intended the State to have his property if his brother Martin did not survive him? If he had had such a bizarre intent, would he have left any doubt?" Clearly if that had been Jetter's intent, a single simple sentence so indicating in his will would have sufficed. However such direction cannot be found in that document.

[¶ 24.] In this type of a factual setting we find the analysis of the Supreme Court of Oregon in *Bruner v. First National Bank*, 250 Or. 590, 443 P.2d 645, 646 (1968) persuasive:

> As we construe the will the provision disinheriting the named persons was designed simply to prevent any of them from claiming as pretermitted heirs under ORS 114.250. If testatrix had intended to preclude Raymond Mack from taking under any circumstances, it would seem that she would have made provisions to effectuate her purpose. This could have been accomplished by a simple provision disposing of

---

8. The court incorporated by reference into its findings of fact and conclusions of law its oral decision issued at the hearing.

9. The trial court's uncertainty as to whether this devise of the entire estate to Martin constituted a

residuary clause is resolved by *In re Estate of Wolff*, 349 N.W.2d 33, 35 (S.D.1984) which held a provision giving an entire estate was not a residuary clause.

the estate to others in the event that her daughter predeceased her.[10]

[¶ 25.] Attorney Molstad in drafting Jetter's will may well have had similar concerns. John Carl Jetter, Jetter's alleged half-blood brother would be treated the same under the then-existing South Dakota law, SDCL 29-1-13, repealed 1995 S.D.Sess.L. ch. 167, § 96,[11] as whole-blood brother, Martin. As such, under our intestate statutes, John stood as an equal with Martin for inheritance purposes. SDCL 29-1-7, repealed 1995 S.D.Sess.L. ch 167, § 96. If John were deceased, his children had the right of representation to advance a claim. SDCL 29-1-14, repealed 1995 S.D.Sess.L. ch. 167, § 96. The fact that John and his descendants were aliens did not preclude his intestate rights. SDCL 29-1-17, repealed 1995 S.D.Sess.L. ch. 167, § 96.

[¶ 26.] The language of the third paragraph is supportive of this interpretation as Robert "specifically disinherit[s] ... all persons whomsoever who, if I died intestate, would be entitled to any part of my estate except those herein provided for."[12] In addition, there is the reference to disinheriting those "claiming to be heirs at law," the exact disputed status of John and his heirs upon Jetter's death.

██ [¶ 27] There is evidentiary support for this view. Craig Hanrahan, a witness to the discussions between Jetter and Molstad and the signing of the will, testified that Molstad emphasized to Jetter that this was only a temporary will that would not constitute a permanent estate plan. Hanrahan quoted Molstad as telling Jetter this would, "just be a temporary will, and you need to get some estate planning set up, and figure out who you want to leave things to and get that down." In addition Molstad's notes [13] list "John C. Jetter" as a half-blood brother and list one child by John's first wife and four children by John's second wife and then states: "disinherit all above." Hanrahan quoted Jetter at the time of the signing of Jetter's will that Martin and Jetter were "getting kind of tired of loaning money" to these relatives and that "Barb and her brother and sisters, they think we're a couple of crazy old bastards living out here and we don't want them to have a f—k—g thing." While "Barb and her brother and sisters" had fallen into apparent disfavor with Jetter at this point, the Molstad notes show that other relatives were discussed and were not included in this negative comment by Jetter. Where a will is ambiguous on its face, such extrinsic evidence is admissible to establish the intent of the testator. *In re Estate of Nelson*, 250 N.W.2d 286, 288 (S.D.1977); *In re Estate of King* 278 N.W.2d 171, 173 (S.D. 1979).

[¶ 28.] People do not go to a lawyer to have a will drawn with the idea that their estate will pass under the intestate succession laws. That is the whole purpose of a will, to avoid the State's estate plan by creating your own. Thus, it seems eminently more logical that Jetter had Molstad draft the disinheritance language of the third paragraph to preclude

---

10. The pertinent part of the will in *Bruner* is as follows:

"THIRD: I give and bequeath my son, Doc Mack, my daughter, Bertha Quiver, my grandsons Floyd Mack and Raymond B. Mack, the sum of Ten Dollars ($10.00) each. I intentionally make no other provision for the above named persons. I am expressly disinheriting all of the above persons except as heretofore mentioned and any and all other persons except my daughter Dressie Mack Reynolds, and I do hereby assert my right to dispose of my property by will as I see fit."

"FOURTH: It is my desire and intention that all of the rest, residue and remainder of my property, wheresoever situated, of which I may die seised, or to which I may be entitled or have or acquire any interest therein whether legal or equitable, and whatever nature whatsoever, whether real or personal or mixed, I give and bequeath to my daughter, Dressie Mack Reynolds."

11. Although it is clear that the Uniform Probate Code controls this action, at the time the will was drafted, South Dakota's previous probate code was still in effect and it is under the prior code that Molstad and Jetter would have discussed Jetter's options.

12. A further ambiguity of this paragraph is its disinheritance of all those categories listed except "those herein provided for." (emphasis added). "Those" is in the plural, yet the only one provided for in the document is Martin.

13. Molstad was deceased at the time of this proceeding.

claims from would-be known and unknown relatives, that they were unintentionally omitted, rather than the conclusion that this clause was Robert's intention of leaving all his property to the State of South Dakota. *See Kimley v. Whittaker*, 63 N.J. 235, 306 A.2d 443 (1973) (the court arriving at a similar analysis in a case involving a nearly identical fact pattern).

[¶ 29.] Ordinarily in an escheat issue, there is no will and thus the escheat arises by force of law. Here however, intent is a crucial issue. The record is absolutely void of any hint that Jetter wished to leave the substantial fruits of his life-long labors to the State. There is no evidence of inter vivos gifts to the State and not one statement attributed to either of the Jetter brothers that they wanted their assets to go to the State. Based on this, can it be concluded that Jetter elected to leave nothing to his relatives, leave nothing to his friends, leave nothing to the local charities and churches, or leave nothing to the local schools so that all his worldly possessions could go to the State of South Dakota?

[¶ 30.] We conclude the will is ambiguous and affirm the trial court on this issue.

[¶ 31.] **3. Whether the trial court erred in holding that Jetter's estate passes by intestate succession to his heirs?**

[¶ 32.] As has been determined, the will of Jetter is ambiguous and under the South Dakota Uniform Probate Code the State is not entitled to an escheat. This final issue then addresses what is the proper disposition of Jetter's estate. The question calls for a construction of SDCL 29A–2–604. This statute provides:

(a) A devise, other than a residuary devise, that fails for any reason becomes a part of the residue.

(b) *A residuary devise that fails for any reason passes to the testator's heirs unless*

the residue is devised to two or more persons, in which event the failed devise passes to the other residuary devisee, or to other residuary devisees in proportion to the interest of each in the remaining part of the residue.

(emphasis added).

[¶ 33.] As noted previously in paragraph 23, the devise to Martin, which is for Jetter's entire estate, cannot be preserved by South Dakota's anti-lapse statute, SDCL 29A–2–603(a)(ii), as Martin left no descendants surviving Jetter. Thus, this devise lapses and becomes part of the residue under SDCL 29A–2–604(a). Since Jetter made no provision for the distribution of the residue, SDCL 29A–604(b) provides the estate passes to Jetter's heirs.[14]

[¶ 34.] In accord is SDCL 29A–2–101(a) which states that: "[a]ny part of a decedent's estate not effectively disposed of by will or otherwise passes by intestate succession to the decedent's heirs as prescribed in this code, except as modified by the decedent's will." We agree with the rationale of the trial court that the term "except as modified by the decedent's will" can only be interpreted as meaning that the modifications in the will must effectively dispose of the estate and if the modifications in the will do not do so, then the estate "passes by intestate succession to the decedent's heirs as prescribed in this code." As there is no modification plainly indicated, the statutes control and the estate passes to the intestate heirs. *Schalk v. Dickinson*, 89 S.D. 263, 272; 232 N.W.2d 140, 145 (1975).[15]

## CONCLUSION

[¶ 35.] We affirm the trial court for the above reasons. We remand to the trial court for completion of the probate proceedings.

---

14. SDCL 29A–2–601 provides "[i]n the absence of a finding of a contrary intention, the rules of construction in this Part control the construction of a will." Since the will has been determined to be ambiguous, no contrary intention is found to exist and SDCL 29A–2–604(b) controls distribution of the estate.

15. The State does not leave this case empty-handed. We granted an expedited procedure in this case at the request of all parties because if the Jetter heirs prevailed, substantial amounts of inheritance tax would be due the State and interest would accrue until the case was resolved and any taxes due were paid.

[¶ 36.] AMUNDSON and KONENKAMP, JJ., concur.

[¶ 37.] SABERS, J., and DeVINE, Circuit Judge, dissent.

[¶ 38.] DeVINE, Circuit Judge, sitting for MILLER, Chief Justice, disqualified.

SABERS, Justice (dissenting).

[¶ 39.] I join the dissent of Judge DeVine.

[¶ 40.] It seems to me that the majority opinion strains mightily to make nonsense out of sense and ambiguity out of clarity. Robert's will provides:

> I have *intentionally omitted* all of my heirs and all other persons whomsoever, who are not specifically mentioned herein, and I hereby *generally and specifically* disinherit each and all persons whomsoever claiming to be my heirs-at-law and each and all persons whomsoever who, if I died intestate, would be entitled to any part of my estate except those herein provided for.

(Emphasis added).

[¶ 41.] One would think it would be adequate to "intentionally omit" all of one's relatives—not *generally,* but *specifically* and not *once,* but *twice.* How many times must Robert say it to satisfy the majority opinion? If that language does not satisfy the majority opinion, then what, if anything, will?

[¶ 42.] The majority opinion even twists Robert's stated intention. Robert wanted two things. He wanted to leave everything to Martin and he wanted to disinherit his relatives. Instead of accepting Robert's intentions as stated, the majority opinion states:

> "[C]an it honestly be said, after resolving all doubts against the State, that Robert Jetter intended the State to have his property if his brother Martin did not survive him? If he had had such a bizarre intent, would he have left any doubt?" Clearly if that had been Jetter's intent, a single sentence so indicating in his will would have sufficed. However such direction cannot be found in that document.

I submit that such direction can (and should) be found in that document. In fact, Robert's stated intention to disinherit his relatives was not limited to his will. There was testimony that Robert stated that he and Martin were "getting kind of tired of loaning money" to these other relatives and that "Barb and her brother and sisters, they think we're a couple of crazy old bastards living out here and we don't want them to have a f—k—g thing."

[¶ 43.] The majority opinion uses this testimony to state: "Where a will is ambiguous on its face, such extrinsic evidence is admissible to establish the intent of the testator." I submit that the majority opinion is using this extrinsic evidence to defeat, rather than to establish, the intent of the testator.

[¶ 44.] I would reverse and remand for the trial court to follow the testator's intention and disinherit the relatives as he directed.

DeVINE, Circuit Judge (dissenting).

[¶ 45.] The plain language of SDCL 29A–2–101 mandates that words of disinheritance in a will apply to the testator's property passing by intestate succession. The majority opinion results in distribution of Jetter's estate to his intestate heirs which does not give this statute or the will their intended effect.

[¶ 46.] A reason exists why the Jetter heirs could not find any cases in three hundred years where an escheat was allowed when heirs existed. Before the Uniform Probate Code was adopted, no testator could disinherit heirs by will if his estate passed intestate. The Court should presume that the legislature enacted SDCL 29A–2–101 to change existing law. *Delano v. Petteys,* 520 N.W.2d 606, 609 (S.D.1994); *John Morrell & Co. v. Dept. of Labor,* 460 N.W.2d 141 (S.D. 1990); *Rosander v. Bd. of Cty. Comm'rs.,* 336 N.W.2d 160 (S.D.1983). Today, SDCL 29A–2–101 does allow a testator to disinherit an individual or a class in a will, and therefore, may result in an escheat to the state if all heirs are disinherited by that will.

[¶ 47.] Finding the disinheriting clause ineffective or the will ambiguous is stretching the facts to obtain the desired result. "All the words and provisions appearing in [a] will must be given effect as far as possible, and none should be cast aside as meaningless." *In re Estate of Bock,* 85 S.D. 113, 115, 177

N.W.2d 734, 735 (1970). "To hold otherwise would convict a testator of performing a useless act." *Id.* The circuit court concluded and the majority agrees that "the plain language of the will indicates that Jetter intended to disinherit his other heirs if Martin was alive, but there is no indication that he intended to disinherit them if Martin predeceased him." This intent alleged by the Court could not be obtained by reading this will. There was no need for Jetter to include a disinheriting clause in his will if Martin, the sole devisee, was still alive because Martin would have taken all of Jetter's estate and these heirs would not be considered pretermitted heirs. The disinheriting clause is only effective in the present situation—— where Martin predeceases Jetter and the estate passes intestate. The trial court and this Court's holding gives this disinheriting clause no effect, rendering it a useless act by Jetter.

[¶ 48.] Examination of the next provision in Jetter's will further supports the conclusion that he intended for the disinheriting clause to apply if Martin predeceased him. "It is axiomatic that in gathering the intention of the testator a will must be considered as a whole." *In re Barrett's Estate,* 70 S.D. 475, 478, 18 N.W.2d 787, 789 (1945). The fourth provision of the will not only names Martin as executor of Jetter's will, but also provides for an alternate executor should Martin predecease Jetter. Clearly, Jetter had this contingency in mind when he drafted his will, and intended that the disinheriting clause would come into effect if Martin predeceased him.

[¶ 49.] As the majority stated, the purpose of a will is to avoid the State's estate plan and to create your own. Jetter drew up a will to ensure that his heirs would not take any of his estate which they would be entitled to if he had not drafted a will. The clause in Jetter's will unambiguously states that he disinherits all persons who would be entitled to his estate if he died intestate. Because his brother predeceased him, the Court holds that Jetter's estate passes intestate under the anti-lapse rules. The disin-

heritance clause was included in the will to prevent the exact result from happening.

[¶ 50.] The majority finds Jetter's will ambiguous partly because he did not specifically name the state as a subsequent taker in the event his brother predeceased him. Jetter should not have to specifically name the state as subsequent taker. By drafting his will leaving everything to Martin without naming a subsequent taker and including a clause disinheriting all his heirs, Jetter should have been able to accomplish the same result: escheat to the state. This Court's finding that Jetter's will is ambiguous for not naming the state as a devisee has the effect of passing his estate to his intestate heirs whom he unambiguously disinherited in his will.

[¶ 51.] Even if the will were ambiguous, that should not change the result. When an ambiguity exists, the court determines the intent of the testator based on extrinsic evidence. The extrinsic evidence clearly shows that Jetter did not want his heirs to have a thing, but this Court ignored that evidence and constructed a way to give Jetter's estate to his intestate heirs.

[¶ 52.] Applying SDCL 29A–2–604, the anti-lapse statute, is not appropriate in Jetter's estate because contrary intent exists.[16] Even though the majority finds the will ambiguous, the extrinsic evidence explicitly shows Jetter's intent to prevent his heirs from taking by intestacy. Therefore, the Court should not distribute his estate according to the anti-lapse statute.

[¶ 53.] It is well settled in this state that:

A testator has the privilege and right to dispose of his property as he chooses within limits and in the manner fixed by statute. The law does not require that he recognize his relatives equally or at all.

*In re Estate of Burk,* 468 N.W.2d 407, 412 (S.D.1991); *In re Estate of Borsch,* 353 N.W.2d 346, 349 (S.D.1984). This privilege and right has never been conditioned to only be available to a testator when disposition of his or her property does not result in an escheat. *See Nelson v. State,* 59 S.D. 410,

---

**16.** SDCL 29A–2–601 provides the scope of application of the rules in Part 6 of Chapter 29A–2. This statute instructs "in absence of a contrary intention, the rules of construction in this Part control the construction of a will."

410, 240 N.W. 345, 345 (1932) ("It has always been the law of this state that on failure of title from defect of heirs the property of a decedent should escheat to the state.")

[¶ 54.] The disinheriting provision in Jetter's will excluded all other heirs from taking under the will and the estate passes as if those persons "had disclaimed their intestate shares." Because all of Jetter's heirs have been excluded, no heirs can be found, and under SDCL 29A–2–105 "Jetter's estate passes to the State of South Dakota as provided in SDCL 29A–3–914." [17]

[¶ 55.] Clearly, Robert Jetter did not want any of his heirs besides his brother Martin to receive any of his estate. Robert Jetter would turn in his grave if he knew that his estate was being distributed to the very people he specifically and intentionally disinherited in his will. The majority and the trial court both reached a holding that replaced Jetter's last wishes with their own.

[¶ 56.] Therefore, I dissent, and would reverse the circuit court's ruling.

---

17. SDCL 29A–3–914 provides, in pertinent part: If an heir, devisee, or claimant cannot be found, the personal representative shall distribute the share of the missing person to the person's conservator, if any, otherwise the court shall enter an order directing that the share vest in the state of South Dakota for the support of the common schools.